ARKANSAS DEPARTMENT OF HUMAN SERVICES *v.* ESTATE OF Jeremie FERREL and Chastidy Ferrel

98-1263                                              984 S.W.2d 807

Supreme Court of Arkansas
Opinion delivered February 4, 1999

*Richard B. Dahlgren*, Sr. Att'y, Office of Chief Counsel, for appellant Arkansas Dep't of Human Servs.

*McKinnon Law Firm*, by: *Laura J. McKinnon*, for appellee Estate of Donald Ferrel, Deceased.

LAVENSKI R. SMITH, Justice. This case involves an issue of first impression: Whether the Arkansas Department of Human Services is subject to traditional common-law principles of subrogation when it seeks reimbursement for medical benefits under Ark. Code Ann. §§ 20-77-301-313 (Repl. 1991 and Supp. 1997) and 42 U.S.C. § 1396a(a)25. The Arkansas Department of Human Services ("ADHS") appeals to this court a decision of the Pope County Probate Court holding that it is indeed subject to general equitable principles applied in subrogation cases, in particular, the "made whole" rule. ADHS contends the trial court erred in applying this equitable rule to bar recovery of monies paid by a third party to the Medicaid recipient because of the express statutory lien on such monies.

The facts of this case are not in dispute, and the trial court heard the matter with the parties stipulating to their uncontroverted nature. On September 7, 1992, J.M. Ferrel, a thirteen-year-old boy, was hit by a car while riding his bicycle. The accident caused severe head injuries as well as broken bones, requiring extensive medical treatment. He is now permanently disabled with medical expenses in excess of $167,000.

On August 30, 1994, the probate court of Yell County appointed Jeremie's father, Donald Ferrel, guardian of his person and estate. Mr. Ferrel, in that capacity, negotiated a settlement with Southern Farm Bureau Casualty Insurance Company. This

company provided Okla Hunn, driver of the car that hit Jeremie, liability coverage. The insurance company offered the policy limits of $25,000 to settle the claim. Mr. Ferrel sought and received the court's permission to settle the claim against the driver for $25,000. At the same time, the court ordered Mr. Ferrel to pay attorney's fees and costs to the attorney representing the estate in the accident litigation and to put the remaining funds in a bank account in the name of the estate. No disbursement would be permitted absent a court order.

On November 30, 1994, ADHS's Division of Economic and Medical Services, Third Party Liability Unit filed a claim against the estate of Jeremie M. Ferrel. The ADHS stated that Jeremie's parent or guardian applied and qualified for medical benefits on his behalf. The ADHS pointed out that incident to Ferrel's application they contractually agreed to reimburse the Medicaid program should they receive compensation from third parties for medical costs. The ADHS further asserted that Ark. Code Ann. § 20-77-301-313 (Repl. 1991 and Supp. 1997) gave the State a statutory lien on such compensation should it be received.

Apparently, at some point subsequent, the guardian, Donald Ferrel, motioned the Yell County Probate Court for distribution of funds for expenses. The ADHS filed its objection on January 4, 1996. Mr. Ferrel responded that the State's subrogation interest should be dismissed or, at a minimum, reduced to no more than $2,500 because of remaining medical costs and amounts already expended by the guardian. The matter was transferred to the Probate Court of Pope County after appointment of a new guardian, Josephine Ferrel, due to the unexpected death of the guardian, Donald Ferrel. The court held a hearing on May 22, 1998, in which the parties stipulated to the facts and submitted the matter to the court on their pleadings and briefs.

On June 18, 1998, the court informed the parties by letter that after reviewing the record he believed the case of *Franklin v. Healthsource of Arkansas*, 328 Ark. 163, 942 S.W.2d 837 (1997), controlled the facts of their case. On July 29, 1998, the court entered its order denying ADHS's petition asserting a claim against

the estate. The court made specific findings that (1) the ward's medical costs far exceeded the $25,000 received in settlement; (2) the Arkansas Department of Human Services had paid in excess of $32,000 in necessary medical expenses; (3) that future costs will exceed amounts recovered; and (4) that the *Franklin* case controlled the issues in dispute.

It is from this order that the instant appeal arises. ADHS asserts that its entitlement to recovery of medicaid benefits is not controlled by the common-law equitable principles in *Franklin*. We agree.

This case addresses an apparent conflict between the statutory provision allowing the Arkansas Department of Human Services to collect funds from recipients obtained in a personal-injury action, and the current rule regarding an insurer's subrogation rights stated in the most recent applicable precedent. *Id.*

In *Franklin*, Curtis Franklin had a health insurance contract with Healthsource of Arkansas, which included a subrogation clause and an assignment-of-benefits clause. Following an automobile accident, Healthsource paid medical expenses Franklin incurred. Franklin sued the other driver and accepted an offer from the driver's insurance carrier to settle for $25,000. Healthsource, in a subsequent action, claimed it was entitled to the entire $25,000 under the subrogation clause in its contract because it had paid medical bills of over $71,000 on Franklin's behalf. The trial court agreed with Healthsource and distributed the funds to it, less attorney's fees for Franklin's attorney. Upon appellate review, this court reversed, holding that "the equitable nature of subrogation requires that no distinction need be made between equitable and conventional rights of subrogation. An insured's right to subrogation takes precedent over that of an insurer, so the insured must be wholly compensated before an insurer's right to subrogation arises; therefore, the insurer's right to subrogation arises only in situations where the recovery by the insured exceeds his or her total amount of damages incurred." *Id.* at 169.

The trial court applied this rule to the facts of the instant case and ruled that the ADHS was in the nature of an insurance company seeking subrogation for benefits paid or enforcing an assignment-of-rights clause. In that the "insured," Jeremie Ferrel, was not "made whole" by the insurance settlement, no subrogation right arose. However, the facts and the law of this case differ substantially from *Franklin*. ADHS is not a private insurance company. It is a state agency — a state agency statutorily charged with the responsibility to administer the federal Medicaid program. Federal law requires states which choose to participate in the Medicaid program to "take all reasonable measures to ascertain the legal liability of third parties." 42 U.S.C. § 1396a(a)(25). It also requires the state to seek recovery of reimbursement from the third party to the limit of their liability after Medicaid claims payment. 42 C.F.R. § 433, 138, 139. A state which fails to enact provisions to attempt to recoup expended funds when a third party is liable risks losing federal funding for the state-run Medicaid program. The Legislature of the state of Arkansas enacted legislation to carry out the state's obligation under federal law. This statute has specific provisions addressing the state's obligation. Ark. Code Ann. § 20-77-301-313 (Repl. 1991 and Supp. 1997).

Subchapter 3, titled "Third-Party Liability," addresses the means by which ADHS can recover Medicaid expenditures when a third party is at fault in causing injuries to the Medicaid recipient. Under section 301, ADHS reserves the right to recover from the recipient the benefits it provided when a third party is liable. Section 302 allows the recipient's attorney to be paid reasonable fees and costs before repayment to ADHS when the recipient alone and without ADHS's help or intervention, recovers from the third party. After the payment of fees, ADHS then is allowed to recover from the recipient the amounts it paid for treatment for the related injuries. Section 305 requires that notice be given to ADHS should the recipient receive an award. If notice is not given, and the recipient, his guardian, or attorney disposes of the settlement proceeds, ADHS may pursue an action against the recipient for reimbursement of the funds expended. Section 307

requires that, as a prerequisite to eligibility, every Medicaid applicant must assign his rights to any settlement, judgment, or award obtained from a third party "to the full extent of any amount which may be paid by Medicaid for the benefit of the applicant." The application itself is stated to be an assignment by operation of law, and it is considered a statutory lien on any settlement, judgment, or award received by the recipient from a third party. Ark. Code Ann. § 20-77-307(b) and (c).

Arkansas courts have not as yet directly addressed the effect of current subrogation principles on the Medicaid reimbursement statutes. A state case and a federal district court case in Arkansas touch on the issue but do not specifically address or decide it. In *In re Morgan*, 310 Ark. 220, 833 S.W.2d 776 (1992), a student was injured while playing football at a state college. He was made a ward of the state and appointed a guardian. After the case was settled, ADHS sued Morgan for reimbursement of funds expended for his treatment. The probate court ordered that Morgan reimburse ADHS pursuant to the applicable statutes. On appeal, Morgan argued that, despite the applicable statutes, the probate court had the inherent power to deny reimbursement if it found that it was not in the best interest of the ward. The supreme court affirmed the trial court in that case and held, "Our statutes . . . clearly provide that when a Medicaid recipient receives an award or settlement from a third party which is liable for the injuries covered by the Medicaid payments, the DHS has an absolute right to those proceeds for the amount of the Medicaid payments made." *Id.* at 222. This court required Morgan's estate to reimburse ADHS. While this case seems to answer the question here, the specific issue of subrogation was not raised or addressed.

One Arkansas federal district court has addressed the Medicaid reimbursement statutes in *Jones v. Balay*, 810 F.Supp. 1031 (W.D. Ark. 1992). *Jones*, decided in the U.S. District Court for the Western District of Arkansas, concerned payment of attorney's fees under the Medicaid reimbursement statute when the recipient did not notify ADHS that part of the case had been settled. The case was a malpractice action, and plaintiff recovered substantial

damages but disputed ADHS's entitlement thereto if it did not pay part of the attorney's fees for the recovery. However, the court examined the statute extensively and held that the legislature stated in clear and unambiguous terms that ADHS could recover amounts it paid in medical expenses, with the attorney's fees and costs coming from the settlement proceeds and not from ADHS. *Id.* at 1034, 1037. In that case, the settlement funds substantially exceeded the state's medical payments, and subrogation itself was not in issue.

Other states have addressed similar situations with state-enacted Medicaid recoupment statutes. While their statutes and cases are not controlling in this jurisdiction, their analysis may prove helpful. In most of these cases, the courts' final determinations hinged on the exact wording of each state's statutes differentiating between whether only "subrogation" is provided for or whether a "lien" has been created by statute for the recoupment.

In *Kittle v. Icard*, 185 W.Va. 126, 405 S.E.2d 456 (1991), the West Virginia Supreme Court of Appeals held that the trial court correctly applied the "made whole" rule (equivalent to Arkansas' current rule) and denied reimbursement to its Department of Human Services for expended Medicaid funds. In coming to this decision, the court relied on the language of the reimbursement statute which only provided DHS with subrogation rights. The statute, found at W.Va. Code § 9-5-11, does not create a lien to DHS, but instead only provides that the recipient automatically assign his rights when applying for benefits, and that DHS may recoup benefits under subrogation principles. *Kittle* was later superseded by statute when the West Virginia Legislature changed the meaning of the term "subrogation" in the recoupment statute as it applied to that particular statute. The West Virginia Legislature decided to change the meaning of "subrogation" in this statute as opposed to creating a lien provision, and the effect of the change now allows West Virginia's DHS to recoup benefits from recipients under this new definition of "subrogation". The change in the statute essentially exempted DHS from being bound by the general rules of subrogation. *See, Grayam v. DHS*, 201

W.Va. 444, 498 S.E.2d 12, 21 (1997); *Cart v. General Electric Co.*, 506 S.E.2d 96, 99 (W.Va. 1998).

Several states have allowed recoupment by their Departments when the statute not only provides for assignment of benefits and subrogation, but also creates a lien on the benefits received from the third party. In *Indiana Dept. of Public Welfare v. Larson*, 486 N.E.2d 546 (Ind. App. 3 Dist. 1985), the Indiana Court of Appeals allowed Indiana's Department to collect dollar-for-dollar the funds it expended because the recoupment statute created a lien in favor of the Department. In that case, the recipient argued that the court had the equitable power to determine the appropriate reimbursement amounts to the Department. The court determined that this "subrogation" argument was superseded by the enactment of the recoupment statute creating the lien.

United States District Courts in Minnesota and New York have also determined that a lien created by statute allows recoupment of the entire amount of expended benefits. In *Norwest Bank North Dakota v. Doth*, 969 F.Supp. 532 (D. Minn. 1997) and *Sullivan v. County of Suffolk*, 1 F.Supp.2d 186 (E.D. N.Y. 1998), the District Courts respectively addressed Minnesota's and New York's recoupment statutes in the context of their effect on supplemental needs trusts. In both cases, the courts determined that the state statutes which created liens on the personal-injury settlements/recoveries allowed those states' Departments to recover their benefits despite the fact that the funds had been placed in supplemental needs trusts. In coming to this conclusion, the courts reasoned that the funds recipients received were not their "property," and that the settlement funds from the third party have already been "dedicated" to the Medicaid fund pursuant to the lien and the assignment of benefits. *Norwest Bank*, 969 F.Supp. at 535; *Sullivan*, 1 F.Supp.2d at 190. In essence, the courts reasoned that the settlement recovery never truly belonged to the recipient to allow the settlement funds to be exempt in a supplemental needs trust. Although the courts do not specifically address "subrogation" in this context, the same reasoning could be applied to that situation as well.

In *Copeland v. Toyota Motor Sales U.S.A.*, 136 F.3d 1249 (10th Cir. 1998), a case cited by ADHS, the Court of Appeals allowed the Kansas Division of Social and Rehabilitation Services to recoup expended benefits from a recipient even though no statutory lien was created by the Kansas statute. The court considered the express limitations in the statute and determined that these limitations indicated that the legislature meant that only those limitations should apply. The court refused to apply equitable subrogation because it determined that this additional limitation imposed another term which the legislature did not intend. In other words, when the legislature created the laundry list of limitations, the absence of "subrogation" as a recognized limitation was an indication that the legislature did not intend for it to apply. *Id.*at 1257.

ADHS argues that the reasoning in *Copeland* is applicable here because the Arkansas Legislature changed the Medicaid recoupment statute in 1987 to allow for full recovery of expended benefits instead of a one-third recovery in effect prior to 1987. ADHS argues that this statutory change reflects the legislature's intent to allow full recovery by ADHS without any additional limitations. We agree.

The statute specifically permits ADHS to recover the full amount it paid to the recipient from settlement proceeds. The law actually provides two ways ADHS can recover expended funds. First, it can join in an action against the third party under the lien provision in the statute. Ark. Code Ann. § 20-77-301(a). The lien itself allows ADHS to pursue the third party should it be necessary. ADHS did not take this route in this case, and it is not required to. Second, ADHS can recoup benefits from the recipient on the basis of the statutory language of assignment of benefits. ADHS chose this second means to pursue recoupment of its medical payments. Appellee did not notify ADHS that a settlement had been reached to allow ADHS the opportunity to assert its rights before the settlement funds were paid. There is no indication in the record that the third-party insurer had notice of a Medicaid lien, and when the settlement funds were paid, ADHS

apparently was not included on the settlement check. While the lien provision would possibly allow ADHS to pursue the third-party insurer [*See Daves v. Hartford Accident & Indem. Co.*, 302 Ark. 242, 788 S.W.2d 733 (1990)], this has not been asserted by either party as a possible remedy.

■ The statute, in section 305, indicates that ADHS's ability to pursue the recipient for recoupment is an alternative means of recovery if the recipient fails to notify the third-party insurer of the Medicaid lien. In other words, if the Medicaid recipient fails to notify the third-party insurer of the lien, the statute would not require the insurer to pay double, but instead would require the recipient to pay over funds which actually were meant for ADHS in the first place. Again, however, the record does not indicate whether the third-party insurer was aware of the Medicaid lien. The record does indicate that Ferrel failed to notify ADHS of the settlement.

■ Given the clear, unambiguous language of the statute, it is apparent that the legislature intended that ADHS's ability to recoup Medicaid payments from third parties or recipients not be restricted by equitable subrogation principles such as the "made whole" rule stated in *Franklin.* By creating an automatic legal assignment which expressly becomes a statutory lien, section 307 makes an unequivocal statement that the ADHS's ability to recover Medicaid payments from insurance settlements, if it so chooses, is superior to that of the recipient even when the settlement does not pay all the recipient's medical costs. The statute enables the state to seek "the full amount of benefits paid on behalf of the recipient. . . ." Ark. Code Ann. § 20-77-302 and 307. Principles and rules of equity are powerful tools for courts to achieve fair results but even valuable common-law constructs must yield to a legislative policy determination so plainly stated. The legislature could choose to subject ADHS to traditional subrogation principles but we do not believe it has, and accordingly, we reverse and remand.

Reversed and remanded.