GENERAL ACCIDENT INSURANCE
COMPANY of America
*v.* Teresa JAYNES, Special Administrator of
the Estate of David Laroy Jaynes, Deceased

99-1377                                          33 S.W.3d 161

Supreme Court of Arkansas
Opinion delivered December 14, 2000

*Daggett, Van Dover, Donovan & Perry, PLLC*, by: *Jim Pat Flowers* and *James R. Van Dover*, for appellant.

*David A. Hodges*, for appellee.

TOM GLAZE, Justice. This appeal ensues from a car accident on February 24, 1992, which resulted in the death of David Jaynes, a truck driver for J. T. Shannon Lumber Company. Appellant General Accident Insurance Company, Shannon's workers' compensation carrier, paid more than $101,000 in benefits to David's wife and two children. On April 19, 1994, the Faulkner County Probate Court appointed David's wife, Teresa, as special administrator of David's estate (hereafter the Estate) for the purpose of filing a wrongful death action against those parties responsible for David's death. The Estate brought suit for wrongful death on April 26, 1994, in the Faulkner County Circuit Court against defendants Peterbilt Motor Company; Paccar, Inc., the owner of Peterbilt; and Lend Lease Truck, Inc., which owned the truck driven by David. On November 30, 1994, General Accident was granted leave to intervene in the circuit court lawsuit wherein it claimed entitlement under Ark. Code Ann. § 11-9-410 (Repl. 1996) to a first lien on two-thirds of the Estate's net recovery against the defendants. The Estate answered, denying General Accident's claim to a lien.

On February 4, 1998, the Estate and the defendants in the wrongful death action reached a settlement whereby defendants would pay the Estate $18,500.00, but General Accident reasserted its statutory lien. The defendants responded by confirming that the settlement with the Estate had been reached, but they stated the agreement reached was not a "settlement around" General Accident. Defendants moved to interplead the $18,500.00 settlement

proceeds, requesting the circuit court's approval and this court's directive that the Estate take all necessary steps to consummate the settlement, including the execution of valid lien, a pro rata discharge, an indemnity agreement in completion of all necessary probate court proceedings, and a dismissal with prejudice. A hearing was held on July 27, 1998, at which counsel for the Estate and General Accident attended and made their respective arguments. Three months later, on October 28, 1998, the circuit court entered its order finding the Estate had entered into a settlement in the amount of $18,500.00 with the defendants, and the court approved the settlement as required by Ark. Code Ann. § 11-9-410(c) (Repl. 1996) of the Workers' Compensation Act. However, it determined the settlement amount was insufficient to make the David's beneficiaries and survivors whole; therefore, General Accident's right of subrogation did not arise. The circuit court further held that the $18,500.00 settlement funds should be released to the Estate, free and clear of any subrogation interest or lien claimed by General Accident, and that, upon the probate court's approval of the settlement, all claims in the case should be dismissed for the reasons stated by the circuit court in its letter opinion.

Before the Estate and defendants obtained the probate court's approval, General Accident filed an appeal from the circuit court's October 28, 1998, order and, on February 11, 1999, lodged the record of that proceeding with the court of appeals. Meanwhile, the Estate, without giving notice to General Accident, obtained the probate court's approval of the Estate's and defendants' settlement in the amount of $18,500.00. Specifically, the probate order entered on February 24, 1999, showed the amount satisfied all of the estate's claims against the defendants under the wrongful death action. The probate court further authorized the release and indemnity agreement as a complete release and pro rata discharge of all claims. The probate court made no reference to General Accident, nor was General Accident shown as a party to the proceedings when the February 24 order was entered.

Apparently, on March 22, 1999, General Accident learned of the February 24, 1999 probate court order, which prompted it on March 25 to file a motion to intervene in the probate proceeding seeking a stay of the probate court's order. General Accident did not request the probate court to set aside its Februray 24 order, but instead, on May 20, 1999, requested that the court extend General

Accident time to file a notice of appeal from the February 24 order, because General Accident had no notice of the order whereby the probate court approved the Estate's and defendants' settlement. General Accident asserted that it was entitled to an extension to appeal under Ark. R. App. P. Civ. 4(b)(3) (2000). That rule provides that, upon a showing of failure to receive notice of the judgment, decree, or order from which an appeal is sought and a determination that no party would be prejudiced, the trial court may, upon motion filed within 180 days of entry of the judgment, decree, or order, extend the time for filing the notice of appeal.

On August 27, 1999, the probate court granted General Accident additional time for appeal, finding that (1) General Accident filed its motion for extension timely within the 180-day period from the February 24, 1999, order, (2) General Accident had intervened in the probate case, (3) General Accident had an interest in the February 24 order, since the probate proceeding concerned the circuit court's earlier October 28, 1998, order which extinguished the statutory lien General Accident invoked under the Workers' Compensation Act, (4) the Estate knew General Accident had an interest in the probate court's February 24 proceeding and order, and (5) no party in the probate proceeding would be prejudiced by granting General Accident an extension to appeal.

During the time General Accident pursued its right of appeal from the February 24 probate court order, the court of appeals, on May 12, 1999, dismissed General Accident's pending appeal from the circuit court's October 28, 1998, order because that order was not final. In other words, the court of appeals' May 12 decision was based on the fact that General Accident's appeal, filed on November 18, 1998, from the circuit court order of October 28, 1998, was premature, since the probate court's settlement approval had not yet been rendered when General Accident's notice of appeal was filed.

However, after General Accident's appeal from the circuit court's order was dismissed, it filed on August 16, 1999, a motion with the circuit court to extend General Accident's time for filing its notice of appeal, asserting that it had 180 days to do so under Civil Appellate Rule 4 — again because General Accident had not been made aware of the probate proceeding or the February 24, 1999, order which approved and finalized the October 28, 1998 order. The circuit court agreed, thus allowing General Accident to

file another notice of appeal from the circuit court's October 28 order, so both the circuit court and probate court appeals would be timely filed and the record and cases consolidated for decision making. The records in the two appeals were lodged with the court of appeals on the same day, November 23, 1999, and the court of appeals consolidated them on January 19, 2000. The court of appeals certified these appeals to us on June 15, 2000, pursuant to Ark. Sup. Ct. R. 1-2(b)(1), (2) and (5) (2000).

In its appeal, General Accident asserts that the circuit and probate courts erred when they denied its statutory lien authorized under the workers' compensation provision Ark. Code Ann. § 11-9-410. Specifically, General Accident argues the circuit court erred by limiting § 11-9-410's application on the basis of equitable subrogation concepts that require that an insured be "made whole" before an insurer's statutory lien attaches the recovery. The Estate disagrees with General Accident's position, but first it raises a procedural point, submitting that the probate and circuit courts did not have authority to extend General Accident's time to file its notices of appeal. Of course, if the Estate is correct, General Accident's notices would be untimely and our court would have no jurisdiction to decide General Accident's appeals. Thus, we first consider the Estate's dismissal motion.

The Estate argues that General Accident was not entitled to an extension to file notices of appeal under Rule 4(b)(3) because there was no factual basis to justify the probate court's finding that General Accident was entitled to receive a notice of the probate court's February 24, 1999, order, since General Accident was not a party to the probate proceeding when that order was entered. The Estate is mistaken. While General Accident had not been formally made a party to the probate proceeding before the February 24 order was entered, it should have been. Obviously, General Accident had a pecuniary interest at stake in the wrongful death action filed in circuit court, and that court extinguished General Accident's interest. However, the circuit court conditioned its order on the probate court's approval of the settlement entered into between the Estate and the defendants.

██ Our general rule is that this court cannot act upon an appeal taken by one not a party to the action below. Rather, relief must be had by way of a collateral attack upon the judgment. *See In*

*re: Allen*, 304 Ark. 222, 800 S.W.2d 715 (1990). However, there is an equally long recognized exception to the general rule for one pecuniarily affected by the judgment. *See id*.; *McCoy v. Moore*, 338 Ark. 740, 1 S.W.3d 11 (1997). As already discussed, General Accident was pecuniarily affected by both the circuit and probate court's orders; therefore, we do not dismiss General Accident's appeals.

The Estate also argues General Accident's appeals were untimely because the circuit and probate courts failed to act on (grant) General Accident's appeals within 180 days from the entry of their respective orders on October 28, 1998, and February 24, 1998. The Estate misreads appellate rule 4(b)(3), which provides as follows:

> Upon a showing of failure to receive notice of the judgment, decree, or order from which appeal is sought and a determination that no party would be prejudiced, the trial court may, *upon motion filed with 180 days* of entry of the judgment, decree, or order, extend the time for filing the notice of appeal for a period of fourteen (14) days from the date of entry of the extension order. Notice of any such motion shall be given to all other parties in accordance with Rule 5 of the Arkansas Rules of Civil Procedure. (Emphasis added.)

■ As can be readily seen, it is the motion for an extension that must be filed within 180 days from the order appealed, not the trial court's order granting the motion. Here, General Accident complied with the rule by moving on May 20, 1999, or 85 days after the February 24, 1999, order, for an extension to file its notice in the probate case and by moving on August 16, 1999, or 173 days after the February 24 order, to file its notice in the circuit court case. Because General Accident filed its extension motions within the 180-day period and thereafter filed its notices of appeal within the required fourteen days from the entry of the trial court's extension orders, we deny the Estate's motion to dismiss.

We now turn to the merits of General Accident's appeals where it argues that its right to a statutory lien on any recovery by the Estate is absolute pursuant to § 11-9-410(a). That provision in relevant part provides as follows:

> (a) LIABILITY UNAFFECTED. (1)(A)  The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or

his dependents, to make a claim or maintain an action in court against any third party for the injury, but the employer or his carrier shall be entitled to reasonable notice and opportunity to join in the action.

(B) If they, or either of them, join in the action, they shall be entitled to a first lien upon two-thirds (2/3) of the net proceeds recovered in the action that remain after the payment of the reasonable costs of collection, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his dependents.

(2) The commencement of an action by an employee or his dependents against a third party for damages by reason of an injury to which this chapter is applicable, or the adjustment of any claim, shall not affect the rights of the injured employee or his dependents to recover compensation, but any amount recovered by the injured employee or his dependents from a third party shall be applied as follows:

(A) Reasonable costs of collection shall be deducted;

(B) Then, in every case, one-third (1/3) of the remainder shall belong to the injured employee or his dependents, as the case may be;

(C) The remainder, or so much as is necessary to discharge the action amount of the liability of the employer and the carrier; and

(D) Any excess shall belong to the injured employee or his dependents.

General Accident argues the foregoing statutory language is clear and unambiguous, and it did everything it was supposed to do by paying David's survivors the benefits mandated by the Workers' Compensation Act, intervening in the Estate's wrongful death action against the defendants, and seeking a first lien upon two-thirds of the Estate's net recovery from the defendants. General Accident points out that, despite the mandatory-lien provision, the circuit court erroneously relied on *Franklin v. Healthsource of Arkansas*, 328 Ark. 163, 942 S.W.2d 837 (1997), and denied General Accident any lien right on the Estate's settlement amount of $18,500.00. In his letter opinion, the circuit judge appeared to base his decision on the following language in *Franklin*:

An insured's right to subrogation takes precedent over that of an insurer, so the insured must be wholly compensated before an insurer's right to subrogation arises; therefore the insurer's right to subrogation arises only in situations where the recovery by the insured exceeds his or her total amount of damages incurred . . . .

*Franklin*, 328 Ark. at 169, 942 S.W.2d at 840.

In keeping with the foregoing language, the circuit court held that the $18,500.00 settlement amount would not make David's beneficiaries and survivors whole; therefore, General Accident's lien rights would not be enforced. Accordingly, the circuit court entered its October 28, 1998, order releasing the settlement funds to the Estate, free and clear of any subrogation interest or lien claim by General Accident, upon approval of the probate court.

General Accident urges the circuit court erred in applying the *Franklin* case to the facts here because the *Franklin* court weighed the common or equitable law against contractual or conventional subrogation rights of insurers to monies from third parties, and decided in favor of the insureds in a situation where the recovery was insufficient to cover the entire loss. General Accident argues the present situation differs from the one in *Franklin*, because here, General Accident, as insurer, not only had a contractual right of subrogation, but also an "absolute statutory lien" granted by the General Assembly. In addition, General Accident cites, as controlling, the case of *Arkansas Department of Human Services v. Estate of Ferrel*, 336 Ark. 297, 984 S.W.2d 807 (1999). It submits that, in *Ferrel*, the trial court erroneously relied on *Franklin*, like the circuit court here, when it denied the Department of Human Services ("DHS") its statutory lien provided under Ark. Code Ann. § 20-77-301 to -313 (Repl. 1991 and Supp. 1999) on a $25,000.00 tort settlement received by a Medicaid recipient; the trial court reasoned that the recipient had not been "made whole." General Accident argues that in *Ferrel*, our court reversed the trial court and held the trial court erred in applying the equitable rule to bar DHS's recovery of monies paid to the Medicaid recipient by a third party because DHS possessed an "absolute" statutory lien. General Accident submits that, like DHS in *Ferrel*, General Accident's statutory lien here, under § 11-9-410, attaches the Estate's settlement proceeds paid the Estate by third-party defendants. We disagree with General Accident's argument.

■ First, we point out that this court premised its decision in *Franklin* on its holding in *Shelter Mutual Insurance Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992), where an insurer sought subrogation in return for its payment to its insured for no-fault medical and wage-loss benefits under Ark. Code Ann. § 23-89-202(1) and (2) (Repl. 1991). As in the instant case, the insurer's right to subrogation was statutory. Ark. Code Ann. § 23-89-207 (Repl. 1991) provides as follows:

> (a) Whenever a recipient of § 23-89-202(1) and (2) benefits recovers in tort for injury, either by settlement or judgment, the insurer paying the benefits has a right of reimbursement and credit out of the tort recovery or settlement, less the cost of collection, as defined.

> \* \* \*

> (c) The insurer shall have a lien upon the recovery to the extent of its benefit payments.

Although the insurer's subrogation lien right in *Bough* was established by the General Assembly, the *Bough* court held the insurer's right to subrogation did not arise until the insured was made whole. That same rationale applies to the situation before us now.

Second, while General Accident claims our holding in *Ferrel* should apply to the present situation, we believe that case involved a set of facts and laws far different from the ones here. In *Ferrel*, a thirteen-year-old boy had been severely injured in a car accident. His father, who was appointed guardian of the son's person and estate, applied for Medicaid benefits for him. The father also negotiated a $25,000.00 settlement with the insurer of the driver of the car that hit the boy. The father sought and received the circuit court's permission to settle the claim. Two months later, DHS filed a claim against the estate, pointing out that when the father filled out the application for Medicaid benefits, he contractually agreed to reimburse the Medicaid program in the event the boy received compensation from third parties for medical costs. The father filed a motion with the probate court, asking for distribution of the settlement money. The probate judge, relying on *Franklin*, ruled that the boy had not been made whole by the settlement, and therefore, DHS had no right to recover any of the settlement proceeds.

■ The *Ferrel* court reversed, noting that the facts of the case differed substantially from those in *Franklin*, and the "made-whole" doctrine did not apply. One significant difference was that DHS was not a private insurance company, but rather "a state agency statutorily charged with the responsibility to administer the federal Medicaid program." *Ferrel*, 336 Ark. at 303. Because the federal government dictated that states enact statutes to recover Medicaid funds when a third party was liable, and the state risked losing Medicaid funding if it did not enact such a statute, the court held that the Medicaid statute imposing a lien on any tort recovery controlled over common-law equitable principles of subrogation. In addition, the Medicaid application itself "assign[ed] [the applicant's] rights to any settlement, judgment, or award obtained from a third party 'to the full extend of any amount which may be paid by Medicaid for the benefit of the applicant.' " *Id.* at 304 (citing Ark. Code Ann. § 20-77-307 (Repl. 1991 and Supp. 1997)). Furthermore, the Medicaid recoupment statute permitted DHS to recover the full amount it paid to the recipient from settlement proceeds. *Id.* at 307.

Third, we note that § 11-9-410, on which General Accident relies to support its claim of an "absolute lien," does not in all circumstances provide an enforceable lien. For example, in *Travelers Ins. Co. v. McCluskey*, 252 Ark. 1045, 1052, 483 S.W.2d 179, 183-84 (1972), this court held that § 11-9-410 protects the rights of both the workers' compensation carrier (insurer) and the employee (insured). The *McCluskey* court stated that, as between the insurance carrier and insured employee, the proceeds of any compromise settlement of a tort claim are subject to the lien of the carrier *unless* the settlement has been approved by a court having jurisdiction after the carrier has been afforded adequate opportunity to be heard. *Id.; see also Liberty Mutual Ins. v. Billingsley*, 256 Ark. 947, 511 S.W.2d 476 (1974); *St. Paul Fire & Mar. Ins. v. Wood*, 242 Ark. 879, 416 S.W.2d 322 (1967); *Wentworth v. Sparks Reg'l Med. Ctr.*, 58 Ark. App. 242, 950 S.W.2d 221 (1997); *New Hampshire Ins. Co. v. Keller*, 3 Ark. App. 81; 622 S.W.2d 198 (1981).

■ As can be discerned from the language in § 11-9-410(c), as interpreted by this court's decisions in *McCluskey* and its progeny, the insurer-carrier's lien right against an insured's settlement with a third-party defendant is not necessarily "absolute"; rather, the settlement is subject to a court's approval after the carrier has been

afforded adequate opportunity to be heard.[1] In the instant case, the Estate opted to settle and not to prosecute its cause of action to judgment. General Accident not only was an intervening party to the Estate's lawsuit against the defendants, but also was afforded a hearing before the circuit court that approved the Estate's settlement with the defendants. Because General Accident received the notice and hearing to which it was entitled, we conclude that its lien rights were not abrogated.

For the foregoing reasons, we affirm.

---

[1] While it is of questionable significance here, there was some argument concerning the possibility that General Accident's lien rights were extinguished as against the third-party tortfeasors. This issue was neither raised nor ruled on below.