SOUTH CENTRAL ARKANSAS ELECTRIC COOPERATIVE
and Arkansas Rural Electric Self Insurance Trust *v.* Richard BUCK

02-1366 117 S.W.3d 591

Supreme Court of Arkansas
Opinion delivered September 11, 2003

12

*Chisenhall, Nestrud & Julian, P.A.*, by: *Denise Reid Hoggard*, for appellant.

*McMillan, Turner, McCorkle and Curry*, by: *Madeline L. Bennington*; and *Wilson, Engstrom, Corum & Coulter*, by: *Gary D. Corum* and *Nate Coulter*, for appellee.

DONALD L. CORBIN, Justice. Appellants South Central Arkansas Electric Cooperative and Arkansas Rural Electric Self Insurance Trust appeal an order of the Nevada County Circuit Court denying their motion to enforce their right of subrogation and to interplead funds awarded to Appellee Richard Buck. On appeal, Appellants argue that they are entitled to enforce their subrogation right in an award resulting from Appellee's judgment against a third-party tortfeasor, irregardless of whether Appellee was made whole by that judgment. Appellee counters that the trial court correctly determined that Appellants' lien did not arise because he was not made whole by the judgment. This case was certified to us from the Arkansas Court of Appeals as a matter involving statutory interpretation; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(d)(2). We affirm.

Appellee is employed by Appellant South Central Arkansas Electric Cooperative as a utility lineman. Appellant Arkansas Rural Electric Self Insurance Trust is the Cooperative's workers' compensation carrier. On the evening of April 3, 1999, Appellee was dispatched to return power to residents in rural Nevada County following a thunderstorm. Appellee contacted another employee, Garry White, to assist him. The two discovered that a tree limb had fallen on a power line on Highway 371. In the course of attempting to remove the limb, Appellee was struck by a vehicle driven by John Froozan. Appellee sustained injuries to his head and legs as a result of the accident and was hospitalized for two days. He sought and received workers' compensation benefits of $17,199.62 for medical expenses and $4,779.71 in lost wages from Appellants.

Appellee filed suit against Froozan on September 12, 2000, seeking compensation for lost wages, medical expenses, and pain and suffering resulting from the accident. Appellants intervened, asserting a right of subrogation to any funds awarded to Appellee. A jury trial was held on February 14 and 15, 2002. The evidence at trial demonstrated that Appellee incurred medical expenses totaling $23,587, with his future medical expenses approximated at

$3,000. Appellee also submitted evidence that he had lost $6,000 in overtime wages as a result of the accident. The jury ultimately determined that Appellee had sustained damages in the amount of $80,000. The jury also found, however, that Appellee had been forty percent at fault in the accident; thus, his judgment was reduced to $48,000.

Following the jury trial, counsel for Appellee initially indicated that he was going to pay $17,351.19 to Appellants, an amount equal to two-thirds of Appellee's recovery, based on the provision of Ark. Code Ann. § 11-9-410 (Repl. 2002), granting a lien in their favor. Shortly thereafter, counsel for Appellee notified Appellants that he would not be turning over any of the proceeds from the award based on the fact that Appellee was not made whole by the amount of the judgment.

On May 10, 2002, Appellants filed a motion with the trial court requesting that it enforce their lien against the settlement proceeds and require Appellee to interplead into the court funds paid by Froozan until a decision could be made regarding the distribution of those funds. The trial court held a hearing on the issue on July 30, 2002. At that hearing, Appellee argued that Appellants' right to subrogation was not absolute and did not arise in this case, because he was not made whole by the judgment, as required under this court's case law in *General Accident Ins. Co. v. Jaynes*, 343 Ark. 143, 33 S.W.3d 161 (2000). Appellants countered that the only decision by this court involving the applicability of the made-whole doctrine to workers' compensation claims involved a pre-1993 injury. Because the workers' compensation statute was amended by Act 796 of 1993 and now requires strict construction of the Act, Appellants argued that *Jaynes* was inapplicable and that their lien under section 11-9-410 was absolute. The trial court disagreed, and in a written order filed September 3, 2002, the trial court stated that Appellee was not made whole by the judgment entered against Froozan; thus, Appellants' subrogation right was unenforceable. From that order comes this appeal.

For their first point on appeal, Appellants argue that this court should hold that the made-whole doctrine does not apply in the present situation, despite this court's previous holding in *Jaynes*, 343 Ark. 143, 33 S.W.3d 161, that the doctrine is applicable in cases involving workers' compensation claims. Appellants argue that *Jaynes* is distinguishable and, thus, inapplicable to the present case because it involved a pre-1993 injury. According to Appel-

lants, their lien right is absolute under section 11-9-410, which must be strictly construed. Appellee counters that *Jaynes* and its progeny are controlling and should be followed in the present case. According to Appellee, an insurer's lien is not absolute and does not arise until after the insured has been made whole. Appellee further argues that the made-whole doctrine is not inconsistent with section 11-9-410, because once an insured employee has been made whole, the insurer's right to subrogation then arises.

■ Because the issue now facing this court is one of statutory interpretation, it should be noted at the outset that our review is *de novo*, as it is for this court to decide what a statute means. *Clayborn v. Bankers Std. Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002); *Fewell v. Pickens*, 346 Ark. 246, 57 S.W.3d 144 (2001). With that standard in mind, we now turn to the first issue on appeal.

Section 11-9-410 provides in relevant part:

(a) LIABILITY UNAFFECTED. (1)(A) The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his or her dependents, to make a claim or maintain an action in court against any third party for the injury, but the employer or the employer's carrier shall be entitled to reasonable notice and opportunity to join in the action.

(B) If they, or either of them, join in the action, they shall be entitled to a first lien upon two-thirds (2/3) of the net proceeds recovered in the action that remain after the payment of the reasonable costs of collection, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his or her dependents.

(2) The commencement of an action by an employee or his or her dependents against a third party for damages by reason of an injury to which this chapter is applicable, or the adjustment of any claim, shall not affect the rights of the injured employee or his or her dependents to recover compensation, but any amount recovered by the injured employee or his or her dependents from a third party shall be applied as follows:

(A) Reasonable costs of collection shall be deducted;

(B) Then, in every case, one-third (1/3) of the remainder shall belong to the injured employee or his or her dependents, as the case may be;

(C) The remainder, or so much as is necessary to discharge the actual amount of the liability of the employer and the carrier; and

(D) Any excess shall belong to the injured employee or his or her dependents.

■ This court examined the application of the made-whole doctrine to this statutory provision in *Jaynes*, 343 Ark. 143, 33 S.W.3d 161. At issue in *Jaynes*, was whether an insurance carrier's lien pursuant to section 11-9-410(a) was absolute. In that case, Jaynes died as the result of a work-related injury. His family received over $100,000 in workers' compensation benefits. Subsequently, his estate filed a wrongful-death action against the third-party tortfeasor and ultimately settled their claim for $18,500, even though there was evidence that damages in the case exceeded $400,000. Jaynes's workers' compensation carrier, General Accident, intervened and sought enforcement of its two-thirds lien against the settlement proceeds, pursuant to section 11-9-410. The trial court ruled that, because the plaintiff had not been made whole by the settlement amount, the workers' compensation carrier was not entitled to a lien on any of the settlement proceeds. Relying on its previous decisions in *Franklin v. Healthsource of Ark.*, 328 Ark. 163, 942 S.W.2d 837 (1997), and *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992), this court affirmed, holding that the right to a lien established under section 11-9-410(a) is not an absolute right. Rather, this court held that the insurer-carrier's lien right against an insured's settlement with a third-party defendant is subject to a court's approval after the carrier has been afforded adequate opportunity to be heard.

This court pointed out in *Bough*, 310 Ark. 21, 834 S.W.2d 637, one of the cases relied on by the court in *Jaynes*, that the equitable nature of subrogation is granted an insurer to prevent the insured from receiving a double recovery. In other words, where an insured has been made whole for his loss and is in a position to recover twice for some of the damages, the insurer should not be precluded from employing its right of subrogation. *Id.* The court

in *Bough* also noted that even though an insurer's right to subrogation was statutorily created, it still did not arise until after an insured is made whole.

 The reasoning enunciated in *Bough* was reiterated by this court in *Franklin*, 328 Ark. 163, 942 S.W.2d 837. There, the court stated that:

> An insured's right to subrogation takes precedence over that of an insurer, so the insured must be wholly compensated before an insurer's right to subrogation arises; therefore, the insurer's right to subrogation arises only in situations where the recovery by the insured exceeds his or her total amount of damages incurred.

*Id.* at 169, 942 S.W.2d at 840. Thus, the court concluded that equity requires that an insured be made whole before the insurer's right to subrogation arises. *Id.*

Our decision in *Jaynes*, 343 Ark. 143, 33 S.W.3d 161, was recently followed by the court of appeals in *Phillip Morris USA v. James*, 79 Ark. App. 72, 83 S.W.3d 441 (2002). In *James*, the court of appeals rejected an argument, similar to the one raised in the present case, that *Jaynes* is inapplicable because it involved an accident that predated the passage of Act 796. In rejecting this argument, the court of appeals stated that while *Jaynes* did involve an injury that occurred in 1992, this court relied on the 1996 version of section 11-9-410 in determining that an insurer's lien right is not absolute. The court of appeals further noted that the relevant portion of section 11-9-410(a) excerpted in *Jaynes* is identical in both the pre- and post-Act 796 versions. Finally, the court of appeals pointed out that the General Assembly had met since *Jaynes* was handed down and took no action in response to that decision.

 As the court of appeals pointed out in *James*, we relied on the 1996 version of section 11-9-410 in *Jaynes* and adhered to our duty to strictly interpret the provisions of the Workers' Compensation Act. We agree with the court of appeals that the inaction of the General Assembly since our decision in *Jaynes* is indicative that our holding in that case is consistent with the legislative intent underlying section 11-9-410. Thus, we again reiterate that the lien right granted an insurer under section 11-9-410 is not an absolute right. The lien right does not arise until after an insured has been made whole by a judgment or

settlement against a third-party tortfeasor. This conclusion ensures that an insured is wholly compensated for damages incurred as the result of a work-related accident, but does not receive a double payment.

Appellants also argue that even if the made-whole doctrine applies in this case, the trial court erred in determining that Appellee was not made whole. In support of this argument, Appellants point out that they intervened in this action and participated in the trial. Appellants further argue that the jury took into consideration their lien in determining what amount it would take to make Appellee whole. Appellants base this argument on the fact that during closing arguments, counsel for Appellee told the jury that a portion of any judgment awarded would have to be paid to Appellants. Thus, Appellants argue that when the jury determined that Appellee sustained damages in the amount of $80,000, a portion of those damages consisted of Appellants' lien. Appellants then conclude that the trial court substituted its judgment for that of the jury when it determined that Appellee had not been made whole by the judgment.

 We cannot agree with Appellants that the trial court substituted its judgment for that of the jury in this instance. Their argument on this point is based on an assumption that the jury calculated the sums that they had paid to Appellee in benefits when determining that Appellee's damages totaled $80,000. In fact, we have no way of knowing the basis for the jury's conclusion that damages amounted to $80,000, as all parties to this action below agreed to the use of a general jury verdict form. Where the jury's verdict is rendered on a general verdict form, it is an indivisible entity or, in other words, a finding upon the whole case. *J.E. Merit Constructors, Inc. v. Cooper*, 345 Ark. 136, 44 S.W.3d 336 (2001); *Pearson v. Henrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999). This court will not speculate on what the jury found where a general jury verdict is used. *Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 66 S.W.3d 568 (2002); *Primm v. U.S. Fidelity & Guar. Ins. Corp.*, 324 Ark. 409, 922 S.W.2d 319 (1996).

For their second point on appeal, Appellants argue that Appellee has been made whole under this court's formula set forth in *Franklin*, 328 Ark. 163, 942 S.W.2d 837, and that the trial court erred in refusing to enforce their right of subrogation. In support of this argument, Appellants submit that the injuries and damages established in this case are very different from those in *Jaynes*, 343

Ark. 143, 33 S.W.3d 161. Here, the evidence indicated that Appellee incurred medical expenses totaling $23,587 and was estimated to incur another $3,000 in future medical expenses. The evidence also demonstrated that Appellee sustained $6,000 in lost overtime wages. These damages are in stark contrast to the ones sustained by the employee in *Jaynes*, who ultimately died as a result of his injuries, argue Appellants. In that case, the medical bills totaled over $100,000 and there was evidence that the damages in that case exceeded $400,000; yet, the settlement was only for $18,500, an amount that clearly did not compensate the injured party.

■ It is true that in this case the evidence regarding damages is distinguishable from the evidence in *Jaynes*, but that fact has no impact on a determination of whether Appellee was made whole by the judgment in this case. The controlling factor in determining whether Appellee has been made whole is the application of the formula set forth in *Franklin*, 328 Ark. 163, 942 S.W.2d 837, to the evidence in this case. There, this court stated that "the precise measure of reimbursement is the amount by which the sum received by the insured from the [third party], together with the insurance proceeds, exceeds the loss sustained and the expense incurred by the insured in realizing on his claim." *Id.* at 168, 942 S.W.2d at 839-40, (quoting Warren Freedman, *Freedman's Richards on the Law of Insurance*, v.2 § 12.6 (6th ed. 1990)). Even though the trial court did not analyze the facts of this case under the *Franklin* formula, its conclusion that Appellee had not been made whole was correct.

■■ Here, the jury determined that Appellee incurred damages of $80,000. He actually received a judgment of $48,000. From that judgment amount, costs and attorneys' fees totaling $21,973.22 must be deducted, leaving $26,026.78 in proceeds. This amount combined with the $21,979.33 that Appellee received in compensation benefits totals $48,006.11. Clearly, this amount does not exceed the damages incurred by Appellee. Assuming *arguendo* that the jury did take into account the $21,979.33 paid by Appellants, Appellee still incurred $58,020.67 in non-reimbursed losses; thus, the judgment of $48,000 is still less than the damages incurred by Appellee. In sum, Appellee was not made whole by his judgment against Froozan. We, therefore, cannot say that the trial court erred in determining that Appellants' lien right under section 11-9-410 was not enforceable.

Appellants also make a brief argument that Appellee's contributory negligence should be counted against him in determining whether or not he was made whole. We reject this argument, however, as Appellants failed to raise it below. It is well settled that this court will not consider arguments raised for the first time on appeal. *See, e.g., Arkansas Blue Cross & Blue Shield v. Hicks,* 349 Ark. 269, 78 S.W.3d 58 (2002); *Laird v. Shelnut,* 348 Ark. 632, 74 S.W.3d 206 (2002).

Affirmed.