286 S.W.3d 698 (2008)
ARKANSAS COMPREHENSIVE HEALTH INSURANCE POOL, Clifton Pennington, Linda Pennington, and Pennington Companies, Appellants,
v.
Sammy Lynn DENTON, Appellee.
No. 08-334.
Supreme Court of Arkansas.
September 11, 2008.
*699 Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., by Byron Freeland and Jeffrey L. Spillyards, Little Rock, for appellant.
McHenry, McHenry & Taylor, by Donna McHenry, Robert McHenry, and Greg Taylor, Little Rock, for appellee.
*700 JIM HANNAH, Chief Justice.
This appeal concerns the statutory right of subrogation for the Arkansas Comprehensive Health Insurance Pool (CHIP), which insured appellee Sammy Lynn Denton. Denton leased commercial property owned by Clifton and Linda Pennington, d/b/a Pennington Companies (Pennington). In August 1999, Denton suffered injuries after he fell through an outside deck on the property and incurred medical expenses for the treatment of his injuries. CHIP, as Denton's medical insurance provider, expended $25,336.42 for his care and treatment.
Denton filed suit against Pennington, seeking damages related to his fall. After learning of the suit, CHIP filed a petition to intervene, pursuant to Arkansas Code Annotated section 23-79-510(e)(1)(C)(i) (Repl.2004). The circuit court did not rule upon the petition to intervene.
Later, CHIP learned that Denton and Pennington had reached a financial settlement without the consent of CHIP. On December 4, 2007, CHIP filed an objection to settlement, contending that, pursuant to Arkansas Code Annotated section 23-79-510(e)(2)(B) (Repl.2004), the settlement was not valid because CHIP had not consented to the proposed settlement. The circuit court then held a hearing to determine whether CHIP had a right to object to the settlement and whether Denton would be "made whole" by the proposed settlement amount and Dr. Ralph Scott, an economic consultant and professor in the department of economics and business at Hendrix College, testified about Denton's lost earnings. After reviewing Denton's prior earnings, he calculated that Denton's lost earning capacity was in the range of $453,000 to $1,700,000, and he calculated Denton's lost household services at $117,000. Dr. Scott stated that Denton's total economic loss was in the range of $570,000 to $1,909,000, with an average of $1,240,000.
Denton filed a motion to enter judgment in the circuit court, averring that he and Pennington had entered an agreement "which provided that a Consent Judgment in favor of Sammy Lynn Denton in the amount of $190,000 would be entered of record, and [Pennington] would forthwith pay said judgment." CHIP filed a response, contending that the circuit court was without authority to approve the settlement and requesting reimbursement of the $25,336.42 CHIP had paid for Denton's treatment and care.
The circuit court entered a consent judgment reflecting the settlement reached by Denton and Pennington. Denton then filed a satisfaction of judgment certifying that Pennington had paid him $190,000. On January 16, 2008, the circuit court entered an order denying CHIP's "Motion for reimbursement and prayer to block the subject settlement." The circuit court concluded that CHIP had no right to object to the settlement or to seek reimbursement because Denton was not made whole by the settlement.
CHIP now brings this appeal, asserting that, because Arkansas Code Annotated section 23-79-510 specifically provides CHIP with a "seat at the table" for any settlement discussions, the circuit court erred in denying CHIP's objection to settlement. CHIP also asserts that even if the statute permits parties to reach a settlement without CHIP's consent, CHIP is entitled to reimbursement from the settlement in the full amount of benefits paid on behalf of the insured. In other words, CHIP contends that the made-whole doctrine does not apply to claims made under section 23-79-510.
In this case, we are called upon to construe provisions of Arkansas Code *701 Annotated section 23-79-510 regarding CHIP's right of subrogation. We review issues of statutory construction de novo. Ryan & Co. AR, Inc. v. Weiss, 371 Ark. 43, 263 S.W.3d 489 (2007). It is for this court to decide what a statute means, and we are not bound by the circuit court's interpretation. Id. The basic rule of statutory construction is to give effect to the intent of the General Assembly. Id. In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. This court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. Id. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. Id. However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. Id. This court seeks to reconcile statutory provisions to make them consistent, harmonious, and sensible. Id.
Arkansas Code Annotated section 23-79-510 provides in relevant part:
(e) Right of SubrogationRecoveries.
(1)(A) Whenever the pool has paid benefits because of sickness or an injury to any covered person resulting from a third party's wrongful act or negligence... and the covered person has recovered or may recover damages from a third party that is liable for damages, the pool shall have the right to recover the benefits it paid from any amounts that the covered person has received or may receive regardless of the date of the sickness or injury or the date of any settlement, judgment, or award resulting from the sickness or injury.
....
(C) To enforce this subrogation right, the pool may:
(i) Intervene or join in an action or proceeding brought by the covered person... against any third party.
....
(2)(B) No release or settlement of a claim for damages and no satisfaction of judgment in the action shall be valid without the written consent of the pool to the extent of its interest in the settlement or judgment and of the covered person or his or her personal representative.
....
(4)(A)(i) In the event of judgment or award in either a suit or claim against a third party, the court shall first order paid from any judgment or award the reasonable litigation expenses occurred in preparation and prosecution of the action or claim, together with reasonable attorney's fees.
(ii) After payment of those expenses and attorney's fees, the court shall apply out of the balance of the award an amount sufficient to reimburse the pool the full amount of benefits paid on behalf of the covered person under this subchapter, provided that the court may reduce and apportion the pool's portion of the judgment proportionately to the recovery of the covered person.
Although CHIP's first point on appeal is whether the circuit court erred in denying CHIP's objection to the settlement, the critical issue in this case is whether the made-whole doctrine applies to claims made under section 23-79-510; therefore, that is where we begin our analysis.
*702 In Ryder v. State Farm Mutual Automobile Insurance Co., 371 Ark. 508, 268 S.W.3d 298 (2007), this court discussed the made-whole doctrine and the right to subrogation. We stated:
Subrogation is the substitution of one party for another. The party asserting subrogation is making a demand under the right of another. Subrogation is a normal incident of indemnity insurance. That is to say that because insurers pay the obligations to their insureds, a right in equity to subrogation in the insurer arises. This assures against unjust enrichment by way of double recovery. Southern Farm Bureau Casualty Ins. Co. v. Tallant, 362 Ark. 17, 22-23, 207 S.W.3d 468, 471 (2005)....
The general rule regarding the right to subrogation is that "an insurer is not entitled to subrogation unless the insured has been made whole for his loss...." Shelter Mut. Ins. Co. v. Bough, 310 Ark. 21, 28, 834 S.W.2d 637, 641 (1992).
Id. at 513, 268 S.W.3d at 301-02.
The made-whole doctrine is a descriptive term for application of unjust enrichment. S. Farm Bur. Cas. Ins. Co. v. Tallant, 362 Ark. 17, 207 S.W.3d 468 (2005). An insured should not recover more than that which fully compensates, and an insurer should not recover any payments that should rightfully go to the insured so that he or she is fully compensated. Id.
CHIP suggests that, pursuant to the statute, it has an absolute right to subrogation and that its right is not conditioned upon whether the insured has been made whole. In General Accident Insurance Co. of America v. Jaynes, 343 Ark. 143, 33 S.W.3d 161 (2000), we held that the made-whole doctrine applied to statutory rights of subrogation provided under Workers' Compensation statutes. In Ryder, we held that the made-whole doctrine applied to an automobile-insurer's reimbursement claims made pursuant to Arkansas Code Annotated section 23-89-207 (Repl.2004).
CHIP claims that Ryder and Jaynes are distinguishable from the instant case because those cases involved private insurers, and CHIP is not a private insurer. We fail to see a distinction. A review of the statutory provisions reveals that the General Assembly created CHIP "to provide an alternate market for health insurance for certain uninsurable Arkansas residents." Ark.Code Ann. § 23-79-501(a)(1) (Repl.2004). CHIP has the general powers and authority granted under the laws of the State of Arkansas to health insurers. Id. § 23-79-506(a). Like private insurers, CHIP is charged with, among other things, establishing premium rates for plan coverage and, with the assistance of the commissioner, determining a standard risk rate by considering the premium rates charged by other insurers offering health insurance coverage to individuals in Arkansas. Id. § 23-79-507(a)(1)(A), (2)(A)(i).
CHIP claims, however, that our decision in Arkansas Department of Human Services v. Ferrel, 336 Ark. 297, 984 S.W.2d 807 (1999),[1] is controlling. In Ferrel, a thirteen-year-old boy was injured in a car accident, and his father, who was appointed guardian of the son's person and estate, applied for Medicaid benefits for him. In *703 addition, the father negotiated a $25,000 settlement with the insurer of the driver of the car that hit the boy. Later, DHS filed a claim against the estate, stating that when the father filled out the application for Medicaid benefits, he contractually agreed to reimburse the Medicaid program in the event that the boy received compensation from third parties for medical costs. The father filed a motion with the probate court, asking for distribution of the settlement money. The probate judge ruled that, because the boy had not been made whole by the settlement, DHS had no right to recover any of the settlement.
This court reversed, holding that the made-whole doctrine did not apply. Significantly, this court stated that DHS was not a private insurance company, but rather "a state agency statutorily charged with the responsibility to administer the federal Medicaid program." Ferrel, 336 Ark. at 303, 984 S.W.2d at 808-09. Because federal law required states that chose to participate in the Medicaid program to enact statutes to recover Medicaid funds when a third party was liable, and the state risked losing Medicaid funding if it did not enact such a statute, we held that the Medicaid statute imposing a lien on any tort recovery controlled over common-law equitable principles of subrogation. Further, we noted that the Medicaid application itself "assign[ed] [the applicant's] rights to any settlement, judgment, or award obtained from a third party `to the full extent of any amount which may be paid by Medicaid for the benefit of the applicant.'" Id. at 304, 984 S.W.2d at 809 (citing Ark.Code Ann. § 20-77-307 (Repl.1991 & Supp.1997)).
We disagree with CHIP's assertion that Ferrel is controlling. Ferrel involved the disbursement of federal funds by DHS, a state agency. CHIP administers an insurance program, and the General Assembly has specifically stated that CHIP is not a state agency. See Ark.Code Ann. § 23-79-504(b)(1) (Repl.2004).
In Ryder, we explained that
[i]n a typical insurance scenario, the insured pays premiums to the insurer to assume risks. If the insurer is entitled to reimbursement of the benefits it previously paid to the insurer after the insured receives a settlement from a third-party tortfeasor but still has not been made whole, then a windfall is created for the insurer because it is not being forced to assume of all the risks that it has been paid by the insured to assume.
Ryder, 371 Ark. at 515-16, 268 S.W.3d at 303.
Here, insureds pay premiums to CHIP to assume risks. CHIP is an insurer, and no language in Arkansas Code Annotated section 23-79-510 creates an exception to the general rules regarding subrogation and the made-whole doctrine. Certainly, we do not believe that the General Assembly intended to create a windfall for CHIP. While CHIP has a right of subrogation, see Ark.Code Ann. § 23-79-510(e)(1)(A), that right is not absolute. Pursuant to Arkansas Code Annotated section 23-79-510(e)(2)(B), CHIP can confirm a release or settlement only "to the extent of its interest." CHIP has a right to subrogation only after the insured is made whole. We hold that the made-whole doctrine applies to claims made under Arkansas Code Annotated section 23-79-510. Having determined that the made-whole doctrine applies to claims under section 23-79-510, the court must now determine whether the circuit court erred in determining that Denton was not made whole by the settlement. As previously noted, Denton received a settlement in the amount of $190,000, and he presented testimony to the circuit court that his average economic loss was $1,240,000. In its order, *704 the circuit court found that Denton's medical bills were in excess of $112,412.56 and that Denton had paid $2500 of those bills. The circuit court found credible Dr. Ralph Scott's testimony regarding Denton's economic damages. The circuit court concluded that, while the settlement amount was appropriate under the circumstances of the case, the settlement did not make Denton whole; therefore, the circuit court denied CHIP's motion for reimbursement. On appeal, CHIP merely makes a bare assertion that "there is significant dispute regarding whether Denton was made whole by the $190,000 settlement." Based upon the record before us, we hold that the circuit court's findings are not clearly erroneous. Because Denton was not made whole by the settlement, CHIP is not entitled to subrogation under section 23-79-510.
Regarding CHIP's remaining point on appeal, there is no merit to CHIP's contention that the settlement is not valid because CHIP did not consent. CHIP can confirm a release or settlement only "to the extent of its interest." Ark. Code Ann. § 23-79-510(e)(2)(B). CHIP never held an interest in the settlement because the circuit court determined that Denton was not made whole by the settlement. Accordingly, CHIP's consent was not required.
Affirmed.
GLAZE and BROWN, JJ., not participating.
NOTES
[1] We note that in Arkansas Department of Health & Human Services v. Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), the United States Supreme Court reviewed Arkansas Code Annotated section 20-77-307, the statute at issue in Ferrel, and held that the statute, which automatically imposed a lien in favor of DHS on tort settlement proceeds, was not authorized by federal Medicaid law, to the extent that it allowed a lien on portions of the settlement that were not attributable to medical expenses.