PHILLIP MORRIS USA and Lumbermens Mutual Casualty Company *v.* Gerald JAMES

CA 02-76                                                83 S.W.3d 441

Court of Appeals of Arkansas
Division III
Opinion delivered September 4, 2002

[Petition for rehearing denied October 9, 2002.]

*Rieves, Rubens & Mayton*, by: *Eric Newkirk*, for appellant.

*Martin & Kicklak Law Firm*, by: *Mark L. Martin*, for appellee.

A NDREE LAYTON ROAF, Judge. Phillip Morris USA and its insurance carrier, Lumbermens Mutual Casualty Company ("Phillip Morris") appeal from a decision of the Workers' Compensation Commission. The Commission found that Phillip Morris was not entitled to a credit against appellee Gerald James's third-party tort settlement with Trans World Express airline, which related to a compensable injury James suffered when he fell while exiting an airplane, because James was not "made whole" by the settlement. On appeal, Phillip Morris argues 1) the Commission erroneously applied the "made whole" doctrine to Ark. Code Ann. § 11-9-410 (Repl. 2002) for a post-1993 injury; and 2) even if the "made whole" doctrine applies, the Commission's opinion is not supported by substantial evidence. We affirm. On October 29, 1997, Gerald James was employed by Phillip Morris as Director of National Accounts. On that day, James, while acting within the scope of his employment, fell from the exterior steps of a plane owned by Trans World while exiting the plane at Drake Field in Fayetteville. James suffered severe injuries to his head and spine. Phillip Morris considered the injury to be compensable and immediately began paying James's medical expenses, which totaled $41,353.36 at the time of James's settlement with Trans World. James also continued to receive his salary from Phillip Morris as part of a salary continuation program, until he began drawing social security and disability insurance benefits.

James later filed a third-party action against Trans World for injuries sustained in the incident. Phillip Morris joined the action to recover the amount that it had paid in medical expenses, and also sought a "credit" for future medical expenses. A settlement was reached between James and Trans World for $1,500,000.[1] Phillip Morris and James filed a joint motion for approval of the settlement with Trans World. In approving the settlement agree-

---

[1] $300,000 from the agreement was designated for losses sustained by James's wife. James's actual settlement amount was $1,200,000.

ment, the Administrative Law Judge (ALJ), withheld ruling on the "credit" issue, but approved the distribution of proceeds. James received a one-third share of the net settlement (after deduction of collection costs) that equaled $254,263.98. Lumbermens Mutual Casualty Company received $41,353.36 for reimbursement of past medical expenses that it had paid, leaving a balance of $467,174.61 in dispute.

Phillip Morris refused to pay any further medical expenses for James, claiming that it was entitled to a credit against the remaining $467,174.61 until it was used in its entirety. After a hearing, the ALJ found in favor of Phillip Morris on this issue.

James appealed the ALJ's ruling to the Commission. While his appeal was pending, the supreme court handed down *General Accident Insurance v. Jaynes*, 343 Ark. 143, 33 S.W.3d 161 (2000). The Commission, after instructing the parties to provide supplemental briefs in light of *Jaynes*, found that Phillip Morris was not entitled to the credit because James was not "made whole" by the settlement. Phillip Morris appeals from this decision.

Phillip Morris first argues that the Commission erred in applying the "made whole" doctrine to James's claim. It contends that the Commission's reliance upon *General Accident Insurance v. Jaynes, supra*, was erroneous because *Jaynes* involved a workers' compensation claim arising in 1992, and that the current case is governed by Act 796 of 1993 because James's injury occurred in 1997. Phillip Morris contends that the "made whole" doctrine announced in *Jaynes* should apply only to pre-Act 796 injuries.

In support of this contention, Phillip Morris makes several arguments: 1) that Ark. Code Ann. § 11-9-704(c)(3) (Repl. 2002) directs that the provisions of Act 796 of 1993 be strictly construed as opposed to the former standard of liberal construction; 2) that a provision added by Act 796, Ark. Code Ann. § 11-9-410(b)(5), states unequivocally, "the purpose and intent of the subsection is to prevent double payment to the employee"; and 3) that the language contained in Ark. Code Ann. § 11-9-410 is clear and unambiguous, has been found to be so by the supreme court, does not make any reference to an injured employee being made whole, and is explicit in requiring that the employer/carrier's lien be "absolute." Also, much of Phillip Morris's argument is

devoted to criticism of the *Jaynes, supra,* decision. Phillip Morris suggests that, in deciding *Jaynes,* the supreme court improperly relied on earlier subrogation cases that did not involve workers' compensation insurance and failed to consider the weight of authority from either Larsen, *The Law of Workmen's Compensation* or cases decided in other jurisdictions with similar statutes.

Arkansas Code Annotated section 11-9-410 (Repl. 2002) grants a statutory lien to employers or carriers for compensation benefits paid and to be paid by them against the proceeds recovered from a third party on account of an employee's injury. It provides in relevant part:

(a) Liability Unaffected. (1)(A) The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall *not affect the right of the* employee, or his dependents, to make a claim or maintain an action in court against any third party for the injury, but the employer or his carrier shall be entitled to reasonable notice and opportunity to join in the action.

(B) If they, or either of them, join in the action, they shall be entitled to a *first lien upon two-thirds (2/3) of the net proceeds* recovered in the action that remain after the payment of the reasonable costs of collection, for the payment to them of the amount paid *and to be paid by them as compensation to the injured employee or his dependents.*

(2) The commencement of an action by an employee or his dependents against a third party for damages by reason of an injury to which this chapter is applicable, or the adjustment of any claim, shall not affect the rights of the injured employee or his dependents to recover compensation, but any amount recovered by the injured employee or his dependents from a third party *shall be applied as follows:*

(A) Reasonable costs of collection shall be deducted;

(B) Then, in every case, one-third (1/3) of the remainder shall belong to the injured employee or his dependents, as the case may be;

    (C)   *The remainder, or so much as is necessary to discharge the actual amount of the liability of the employer and the carrier; and*

    (D)   Any excess shall belong to the injured employee or his dependents.

Ark. Code Ann. § 11-9-410 (2001) (emphasis added).

In *Jaynes*, the supreme court considered whether an insurer's statutory right to subrogation under Ark. Code Ann. § 11-9-410 applies whether or not the claimant is made whole as a result of the recovery from the third party. David Jaynes was killed while driving a truck owned by Peterbilt Motor Company during the course of his employment with J.T. Shannon Lumber Company. General Accident Insurance provided more than $100,000 in workers' compensation benefits to Jaynes' family. After Jaynes's estate settled a wrongful death action against Peterbilt for $18,500, General Accident sought to enforce its two-thirds lien on the settlement pursuant to Ark. Code Ann. § 11-9-410 (Repl. 1996). The circuit judge refused to enforce the lien because the estate would not be "made whole." The supreme court affirmed and held that because the settlement amount would not make Jaynes's beneficiaries whole, the insurer's right to subrogation did not arise. The court further held that the insurer's lien was not "absolute" because any settlement with a third party was subject to court approval, and that because the insurer received the notice and hearing it was entitled to, its lien rights were not abrogated.

We do not agree with Phillip Morris's contention that the holding in *Jaynes* is not controlling in this case. While it is true that *Jaynes* involved a 1992 injury, the supreme court's decision cites the 1996 version of Ark. Code Ann. § 11-9-410(a). Moreover, the relevant portion of section 410(a) that is excerpted and discussed in *Jaynes* is identical in both the pre- and post-Act 796 versions. We cannot say that either the requirement of strict construction set out in Ark. Code Ann. § 11-9-704(c)(3) or the additional statement of purpose now found in Ark. Code Ann. § 11-9-410(b)(5) allows us to distinguish or disregard this supreme court precedent. We also cannot say that a claimant who is not "made whole" by a third party is receiving a "double recovery" as prohibited by the new section 410(b)(5). We further note that

while the supreme court found the statutory language setting out the disbursement of proceeds from a third party to be clear and unambiguous in *Public Employee Division v. Chitwood*, 324 Ark. App. 30, 918 S.W.2d 163 (1996), the question presented in *Chitwood* was whether the compensation carrier should bear a pro-rata share of the attorney's fees portion of the costs from its subrogation lien. The statutory scheme clearly does not provide for making such a pro rata allocation of collection costs, and *Chitwood* has no bearing on whether the "made whole" doctrine should apply.

■ Finally, we note that the General Assembly has met once without taking any action with respect to this statute since *Jaynes* was decided in 2000. *See Nichols v. Wray*, 325 Ark. 326, 925 S.W.2d 785 (1996). Under these circumstances, we cannot say that the "made whole" doctrine announced by the supreme court in 2000, albeit in respect to a 1992 injury, is, was, or should be abrogated by the passage of Act 796 of 1993. As to any further criticism leveled by Phillip Morris against the merits of the *Jaynes* decision, it should go without saying that such an argument is best directed toward the supreme court.

■ Phillips Morris next contends that even if the "made whole" doctrine applies to this case the Commission's decision is not supported by substantial evidence. We disagree. James, who was forty-five years old at the time of his injury, testified that his annual salary as National Director of Accounts for Phillip Morris, including bonuses, totaled over $300,000. He further testified that he more than likely would have received a promotion in the near future, which would have included a salary increase. James also provided two categorized lists of economic losses that he has and will continue to sustain as a result of his injuries. Each summary showed that James would suffer an economic loss of at least 4.9 million dollars. As due deference is given to the Commission to determine the credibility of the witnesses, it is clear that there was substantial evidence before the Commission upon which it could base its finding that James would not be made whole by a $1,200,000 settlement.

Affirmed.

PITTMAN and GRIFFEN, JJ., agree.