LOGAN COUNTY and AAC Risk Management Services *v.*
Jimmy McDONALD

CA 04-976                                                   206 S.W.3d 258

Court of Appeals of Arkansas
Opinion delivered April 6, 2005

412

*Roberts Law Firm, P.A.*, by: *John D. Webster*, for appellants.

*Walker, Shock, Cox & Harp, P.L.L.C.*, by: *Eddie H. Walker*, for appellee.

OLLY NEAL, Judge. Logan County and AAC Risk Management Services bring this appeal from the May 14, 2003, decision of the Workers' Compensation Commission (Commission) challenging its determinations that (1) appellee Jimmy McDonald was entitled to wage-loss benefits in the amount of twenty-five percent to the body as a whole; (2) appellee had proven by a preponderance of the evidence that he had not been made whole or fully compensated for his loss as a result of his compensable injury; (3) appellant had no subrogation rights in the $11,111.12 balance from a third-party settlement; and (4) appellee's attorney was entitled to attorneys' fees. We hold that the Commission's decision is supported by substantial evidence; accordingly, for the reasons stated below, we affirm the decision of the Commission.

Appellee Jimmy McDonald worked for appellant as a mechanic.[1] On November 21, 2000, McDonald sustained a compensable back injury when the tractor he was driving was rear-ended by another vehicle. He received $25,000 in settlement of his action against the third-party tortfeasor.[2] Dr. Wilbur Giles, a neurosurgeon, treated appellee's injuries; appellee had surgery for his

---

[1] In addition to appellee's work for Logan County as a mechanic, he also maintained his own mechanics business, for which he earned income.

[2] It is undisputed that one-third of those proceeds were deducted for fees associated with collection costs ($8,333.33) and that appellee was entitled to one third of the settlement outright ($5,555.55) leaving a balance of $11,111.12, which is the amount in dispute between the parties.

injuries in May 2001.[3] At the time of the hearing, appellee was fifty-eight years old and testified that Logan County had not offered to put him back to work since his release, but that he believed there were limited things that he could do should he be offered a job. He testified that he had looked for work and had applied for jobs at Tyson's, Jarrad Auto Parts, Parts Plus, Logan County Sheriff's Office, and Lensing Brother's, a lumber-yard/warehouse, but had not heard anything from any of these employers. Appellee admitted that he had not applied for any more jobs since the vocational consultant, Terry Owens, informed him that he could not get a job with the Logan County road department. Appellee noted that he still suffers from back pain, that he cannot sit for extended periods of time, that he suffers from depression as a result of not being able to find work, and that the injury has negatively affected his conjugal relationship with his wife. He further noted that he was still under the care of his primary doctor, and that he takes five medications for his back.

Appellee's wife, Kathleen McDonald, a registered nurse, testified that she and appellee had been married for thirty-eight-and-one-half years, and that since her husband's injury, she has experienced a loss of his services in regard to household repairs. She testified that their conjugal relationship had also suffered. Mrs. McDonald noticed that, since appellee's back injury, he has developed a "Parkinson-type tremor in his right leg when he first stands." She also observed that her husband "walks in a perma-nently bent-forward position." Prior to her husband's injury, Mrs. McDonald stated that her husband was very active. Some of his activities included mowing the grass, building a house roof, and riding four-wheelers. Mrs. McDonald opined that, since his injury, appellee cannot do any heavy lifting and can only perform light mechanical work.

Vocational consultant, Terry Owens, testified at the hearing that she was referred to appellee's case and had assisted him in acquiring work. Owens stated that appellee's work interest re-mained in mechanical work and repair. She looked for mechanical work, in addition to factory and production, janitorial, and secu-rity work. Owens opined that she created a rehabilitation plan for appellee based on his physical abilities, work history, educational

---

[3] Following his injury and surgery, appellee also suffered a stroke, from which he opines he does not suffer any problems.

background, and vocational interest. She provided appellee with job leads and determined that appellee was employable.

Following the testimony at the hearing, the administrative law judge (ALJ) determined that appellee was entitled to wage-loss benefits of ten percent over and above his ten-percent impairment rating. The ALJ also determined that appellee had not been made whole and awarded him the balance of $11,111.12 from his third-party settlement. Appellee's counsel was also awarded fees. Appellants appealed this decision to the full Commission. The Commission determined that, in addition to the award of attorney's fees and the remaining balance from the settlement, appellee was entitled to a ten-percent impairment rating and wage-loss benefits of twenty-five percent. Appellants appeal from this decision.

### 1. Wage Loss

In their first assignment of error, appellants assert that there was insubstantial evidence to support the Commission's decision to award appellee a twenty-five percent wage loss in excess of his impairment rating. They make mention that the Commission "never indicated in the opinion that it found any fault with the Administrative Law Judge's finding that the Appellee was entitled to wage-loss benefits in the amount of ten percent to the body as a whole," and that:

> While it is the case that a workers' compensation claimant's entitlement to wage loss benefits is a question of fact for the Commission, the Administrative Law Judge had the benefit of live testimony and the opportunity to observe the Appellee's demeanor during his testimony that was not granted to the Full Commission, which was forced to rely upon the cold record in making its determination.
>
> The Appellants would contend that allowing the Commission in this instance to simply substitute their finding of wage loss for the Administrative Law Judge's finding without giving any indication whatsoever of the reasoning behind such finding, while apparently in accordance with the letter of the law and existing precedent, hinders the purpose of workers' compensation law by not allowing either side the benefit of the Commission's reasoning or the ability, through that reasoning, to work towards avoiding or truncating future litigation in similar cases.

Appellants' argument is of no moment.

■ In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence, *i.e.*, evidence that a reasonable person might accept as adequate to support a conclusion. *Morales v. Martinez*, 88 Ark. App. 274, 198 S.W.3d 134 (2004). The issue is not whether this court might have reached a different result from that reached by the Commission, or whether the evidence would have supported a contrary finding. *Smith v. County Market/Southeast Foods*, 73 Ark. App. 333, 44 S.W.3d 737 (2001). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.* The Workers' Compensation Commission is not required to believe the testimony of any witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief; once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Emerson Elec. v. Gaston*, 75 Ark. App. 232, 58 S.W.3d 848 (2001).

■■ Because appellee sustained an injury to a portion of his body that is not scheduled under workers' compensation laws, his entitlement to permanent-disability benefits is controlled by Ark. Code Ann. § 11-9-522(b)(1) (Repl. 2002), which states in pertinent part:

> In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the Workers' Compensation Commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his or her future earning capacity.

Pursuant to this statute, when a claimant has been assigned an anatomical-impairment rating to the body as a whole, the Commission has the authority to increase the disability rating, and it can find a claimant totally and permanently disabled based upon wage-loss factors. *Lee v. Alcoa Extrusion, Inc.*, 89 Ark. App. 228, 201 S.W.3d 449 (2005). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Whitlatch*

*v. Southland Land & Dev.*, 84 Ark. App. 399, 141 S.W.3d 916 (2004). The Commission is charged with the duty of determining disability based upon consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. *Id.* In considering factors that may affect an employee's future earning capacity, the court considers the claimant's motivation to return to work, since a lack of interest or a negative attitude impedes our assessment of the claimant's loss of earning capacity. *Emerson Elec. v. Gaston, supra.*

In reaching its decision, the Commission looked to the medical records of appellee's treating physician, Dr. Giles. The Commission found:

> At the time of the hearing, claimant was 58 years old and had a ninth grade education. He has specialized training as a mechanic. Claimant was self-employed as a mechanic for approximately 14 years before going to work for the employer.

> On November 21, 2000, claimant sustained a serious back injury when the tractor he was driving for the employer along the roadway was rear-ended by another vehicle. Claimant eventually came under the care of Dr. Giles, a neurosurgeon, who performed surgery in May 2001.

> In a report dated January 8, 2002, Dr. Giles noted that claimant's convalescence had been less than satisfactory with MRI scan evidence of epidural fibrosis or scarring in the surgical site. After strengthening exercises failed to improve claimant's condition, he underwent a functional capacity evaluation, which clearly showed that he could not return to his prior jobs as a mechanic due to the use of heavy equipment and the prolonged sitting, standing, and heavy lifting. Dr. Giles noted that "[t]his could not be accomplished not only due to his chronic pain, but to palpable muscle spasm which increased in severity with the motor testing that was required."

> As a result of the above findings, Dr. Giles rated claimant's permanent anatomical impairment at 10% to the body as a whole. Additionally, Dr. Giles noted that claimant "will be in need of muscle relaxants, analgesics, and even possibly physical therapy with modalities and mild analgesics from time to time in the future." Claimant testified that he takes five prescription medications for his condition.

As noted above, the results of the functional capacity evaluation conducted in April 2002 revealed significant physical limitations or restrictions. Moreover, the functional capacity evaluation was repeated in December 2002 and Dr. Davis noted a "40% deterioration."

Respondent hired Terry Owens, a vocational case manger, to assist claimant in returning to work. Claimant has been highly motivated in trying to find gainful employment through his own personal efforts and through the assistance of, or suggestions by, Owens. It appears that claimant has applied for most, if not all, jobs within his restrictions and located within a reasonable distance from his residence. He has been unable to find any employment. Serious efforts were made by claimant to return to work for the employer, but the employer was either unwilling or unable to allow claimant to remain as an employee.

Based on the above factors, which are reasonably expected to affect claimant's future earning capacity, we find that claimant has proven by a preponderance of the evidence that he is entitled to benefits for wage-loss disability in an amount equal to 25% to the body as a whole.

■ ■ Substantial evidence supports the finding of the Commission. Notwithstanding appellants' comments that the ALJ, unlike the Commission, had an opportunity to view the demeanor of the witnesses, suggesting apparently that we defer to the ALJ's capacity to gauge credibility in our review of workers' compensation cases, the ALJ's findings are given no weight whatsoever. It is well-settled that the Commission reviews an ALJ's decision *de novo*, and it is the duty of the Commission to conduct its own factfinding independent of that done by the ALJ. *Crawford v. Pace Indus.*, 55 Ark. App. 60, 929 S.W.2d 727 (1996). Moreover, in reviewing workers' compensation cases, this court reviews only the findings of the Commission and ignores those of the ALJ. *Id.* The Commission considered appellee's age, education, and work experience. It also looked at appellee's work limitations as provided through Dr. Giles's medical evidence. Therefore, as substantial evidence supports the Commission's finding, we affirm on this point.

### 2. & 3. *"Made Whole" and "Subrogation Right"*

Appellants' next two arguments concern appellee being "made whole" and their subrogation rights as against the third-

party settlement. They argue that the Commission erred in determining that appellee had not been made whole through his receipt of the third-party settlement. In making its finding, the Commission determined that:

> Claimant received $25,000.00 in settlement of his action against the third-party tort-feasor. In determining whether claimant has been "made whole" by the proceeds of the third-party settlement, we must compare the amount of workers' compensation benefits received by claimant with the total amount of damages incurred (including expenses) in realizing on his third-party action. Respondent can receive reimbursement only for the amount by which the sum received in third-party action exceeds the total amount of damages incurred. See Gerald James v. Phillip Morris, Full Commission Opinion filed October 24, 2001 (E713387).

> Respondent has submitted documentary evidence in an effort to support its allegations concerning the amount of benefits it has paid on this claim. However, whereas this document suggests a grand total of $43,644.59, when we add up the various totals, we reach the sum of $38,553.16. Using this total, plus the $25,000.00 claimant received in the third-party settlement, plus $17,325 (the 25% wage-loss disability award), claimant will have received approximately $81,000.000. There is insufficient evidence that claimant has been fully compensated, or in other words, "made whole."

> We would initially point out that there is only $11,111.12 available for reimbursement to respondent out of the proceeds of the third-party settlement. Further, it is likely that the $25,000 settlement was not entirely to compensate claimant alone, but included damages suffered by claimant's spouse. It also should be remembered that the sums respondent paid for temporary and permanent disability pursuant to the Workers' Compensation Law did not fully compensate claimant for his loss in these areas. During the weeks that claimant was voluntarily compensated by respondent for these disabilities, he received only two-thirds of his average weekly wage. This difference is approximately $7,100.00 and certainly does not include any future wage loss.

> Additionally, Dr. Giles has opined that claimant will need future medical treatment including prescription medications and physical therapy with modalities.

> After considering the above evidence, we find that there is insufficient evidence that claimant has been "made whole." He is

certainly not receiving a double recovery. Accordingly, respondent is not entitled to any reimbursement from the proceeds of the third-party settlement.

Although we could summarily affirm on this point because appellants have failed to provide us with any case law beyond the given standard, *Smith-Blair, Inc. v. Jones*, 77 Ark. App. 273, 72 S.W.3d 560 (2002) (where appellant's argument lacked any citation to authority, the appellate court would not consider it; the appellate court will not consider the merits of an argument when an appellant fails to cite any convincing legal authority in support of that argument, and it is otherwise not apparent without further research that the argument is well taken), we have instead chosen to reach the merits.

The "made-whole" doctrine, under Ark. Code Ann. § 11-9-410 (Repl. 2002), grants a statutory lien to employers or carriers for compensation benefits paid and to be paid by them against proceeds recovered from a third party on account of an employee's injury. *South Cent. Ark. Elec. Coop. v. Buck*, 354 Ark. 11, 117 S.W.3d 591 (2003). However, that right is not absolute; rather, the insurer-carrier's lien right against an insured's settlement with a third-party defendant is subject to a court's approval after the carrier has been afforded adequate opportunity to be heard. *Id*. An insured's right to be made whole takes precedence over an insurer's right to subrogation; the insured must be wholly compensated before an insurer's right to subrogation arises. *See id*. Therefore, the insurer's right to subrogation arises only in situations where the recovery by the insured exceeds his or her total amount of damages incurred; equity requires that an insured be made whole before the insurer's right to subrogation arises. *Id*. The controlling factor in determining whether appellee was made whole by the judgment here was the application of the formula set forth in *Franklin v. Healthsource of Arkansas*, 328 Ark. 163, 942 S.W.2d 837 (1997). There, the court stated that "the precise measure of reimbursement is the amount by which the sum received by the insured from the [third party], together with the insurance proceeds, exceeds the loss sustained and the expense incurred by the insured in realizing on his claim." *South Cent. Ark. Elec. Coop. v. Buck, supra.* 354 Ark. at 20, 117 S.W.3d at 597 (citing *Franklin v. Healthsource of Ark.*, 328 Ark. at 168, 942 S.W.2d at 839-40).

■ Here, there is no evidence in the record to support the Commission's speculation that a portion of the third-party settlement was for appellee's wife; nor is there sufficient evidence in this record for the Commission to forecast as to appellee's future medical problems.[4] Nevertheless, notwithstanding those unsupported findings, there remains sufficient evidence for this court to affirm the finding that appellee had not been made whole, taking into account the Commission's review of appellee's income-earning loss both before and after his compensable injury. Furthermore, the third-party settlement was a tort action, for which a portion of appellee's award was due to his pain and suffering — a damage award not available through workers' compensation. *See Golden v. Westark Cmty. Coll.*, 58 Ark. App. 209, 948 S.W.2d 108 (1997) (citing *State v. Richardson*, 482 S.E.2d 162 (W. Va. 1996); Ark. Code Ann. § 11-9-105) (payments to injured workers under workers' compensation are in lieu of such elements of damages for common law tort as lost wages, lost earning capacity, reimbursement of past and future medical expenses, past and present pain and suffering, emotional distress, and other factors; the injured worker's right to seek workers' compensation disability benefits has been substituted for his cause of action against the negligent employer and this remedy has become his exclusive remedy). We affirm this point.

### 4. Attorney's fees

■ Appellants' final contention of error is in the trial court's award of fees to appellee's counsel. To support their argument, appellants assert that the decision relied on by the Commission, *Cleek v. Great Southern Metals*, 335 Ark. 342, 981 S.W.2d 529 (1998), is distinguishable from the case at hand because, in that case, the appellees sought a credit against payment of future benefits; whereas here, they seek reimbursement. As the Commission so notes, the distinction is one without a difference.

■ In *Cleek*, the claimant requested that her claim be determined compensable and controverted and that she be awarded attorney's fees based on the full amount of the medical

---

[4] Appellee is not foreclosed from seeking additional medical benefits in the future from appellants.

expenses. The Commission and our court limited the award of fees based only on the unpaid medical expense of $35.00. The supreme court determined:

> The Commission's attorney's fees award was given pursuant to Ark. Code Ann. § 11-9-715(a)(2)(B)(ii) (Repl. 1996), which provides that fees shall be allowed only on the amount of compensation controverted and awarded. The Commission's and the court of appeals' prevailing opinion accepted Great Southern's argument that the only amount controverted and awarded in this case was the $35.00 amount that Cleek had paid and Great Southern had refused to pay. In other words, Great Southern claimed that the Commission could not award the $2,339.25 in medical expenses because Great Southern had previously paid them and did not seek their reimbursement.
>
> While it is true that Great Southern did not request reimbursement of its payments totalling [sic] $2,339.25, it did ask the Commission to allow Great Southern "credit" for such payments, if the Commission determined Great Southern owed the medical expenses it had already paid. In fact, the Commission found Great Southern had controverted Cleek's entire claim, determined the medical expenses were reasonably necessary, and gave Great Southern the credit it requested. Having done so, we agree with the dissenting judges in the court of appeals' *Cleek* decision that the Commission effectively confirmed and awarded Cleek all of her medical expenses.
>
> In conclusion, this court has long recognized that making an employer liable for attorney's fees serves legitimate social purposes such as discouraging oppressive delay in recognition of liability, deterring arbitrary or capricious denial of claims, and insuring the ability of necessitous claimants to obtain adequate and competent legal representation. *Aluminum Co. of America v. Henning*, 260 Ark. 699, 543 S.W.2d 480 (1976). In the instant case, while Great Southern paid all but $35.00 of Cleek's medical expenses, it never recognized liability for her injury, and if Cleek had not prevailed on the liability issue of her claim, she would have been barred from seeking any future medical expenses or disability benefits. Great Southern's undisputed controversion of Cleek's injury claim forced Cleek to try this case fully on the merits. If Cleek had not employed counsel to assist her in this matter, it is reasonable to conclude both her present and future claims for medical expenses

and benefits would not have been properly presented and protected. 260 Ark. at 706-708; 543 S.W.2d at 485. If the fundamental purposes of attorney's fees statutes such as § 11-9-715 are to be achieved, it must be considered that their real object is to place the burden of litigation expenses upon the party which made it necessary. *Id.*

We reverse the Commission's and the court of appeals' decisions to the extent that they hold Cleek is entitled only to attorney's fees based upon a recovery of $35.00. We remand to the Commission to award attorney's fees based upon the full amount of the medical expenses.

335 Ark. at 344-45, 981 S.W.2d at 530-31. Likewise in the instant case, the Commission's attorney's-fee award was given pursuant to Ark. Code Ann. § 11-9-715(a)(2)(B)(ii) (Repl. 1996);[5] appellants claimed that appellee was not entitled to wage-loss benefits above his impairment rating, thereby seeking to prevent appellee from receiving benefits to which he was entitled. Therefore, their actions amounted to a controversion of benefits for which appellee prevailed. As such, the award of attorney's fees was in order.

Affirmed.

ROBBINS, J., agrees.

PITTMAN, C.J., concurs.

---

[5] The Commission correctly notes that this code section has been amended, but the code section cited is the applicable one as appellee's injury occurred prior to July 1, 2001, the effective date of the amendments of Act 1281 of 2001.