David JOHNSON *v.* LATEX CONSTRUCTION COMPANY and Zurich American Insurance Company

CA 05-1140                                     232 S.W.3d 504

Court of Appeals of Arkansas
Opinion delivered March 15, 2006

*Harrelson, Moore & Giles, L.L.P.*, by: *Greg Giles*, for appellant.

*Wright, Lindsey & Jennings, LLP*, by: *Lee J. Muldrow* and *Gary D. Marts, Jr.*, for appellees.

DAVID M. GLOVER, Judge. Appellant, David Johnson, suffered an admittedly compensable injury to his back while working for appellee Latex Construction Company. At a hearing on

July 29, 2004, the ALJ was presented with the following issues pertinent to this appeal: 1) whether appellant was entitled to additional temporary-total disability benefits, and 2) whether appellant had sustained wage loss in excess of his assigned anatomical impairment rating. The ALJ concluded 1) that appellant was not entitled to additional TTD benefits for the period beginning October 30, 2003, and ending March 4, 2004, and 2) that he was entitled to permanent impairment in the form of wage-loss disability in the amount of forty-five percent above his five-percent permanent-impairment rating to the body as a whole. The Commission modified the ALJ's wage-loss determination and concluded that appellant was only entitled to a ten-percent loss in wage-earning capacity, thereby giving him fifteen percent in total-permanent impairment. The Commission affirmed the ALJ's denial of TTD benefits beyond the date of October 30, 2003. This appeal followed. We reverse and remand for an award of benefits consistent with this opinion.

Appellant was employed by appellee Latex Construction as a welder's helper when he sustained a compensable injury to his back on February 7, 2003, while working on a construction project in Alabama. Although appellant was a trained welder, he explained that it was easier to find regular work as a helper. Appellant was first treated for his injury by Dr. Greg Massanelli at an emergency room in Alabama. A February 13, 2003 MRI revealed "mild dehydration of the discs at L3-4, L4-5 with anterior spondylitic changes and mild disc bulge at L3-4. No other abnormalities noted." After appellant returned to Arkansas, the Commission granted him a change of physician to Dr. Jeffrey DeHaan, who eventually referred appellant to Dr. Edward Saer. Dr. Saer subsequently referred appellant to Dr. Sundar Krishnan. A second MRI was performed on July 31, 2003, as ordered by Dr. Krishnan. It revealed annular tears at L2-3, L3-4, and L4-5, along with small central protrusions at L3-4 and L4-5; however, the study revealed "no definite sign of nerve root impingement." Dr. Krishnan recommended a discogram, but appellees denied the procedure. Dr. Krishnan appealed the denial, contending that the discogram results might indicate the need for intradiscal electrothermal therapy (IDET) or spinal surgery; however, the request was still denied.

Dr. Krishnan's notes reveal that he discussed appellant's condition with Dr. Charles Mauriello, an orthopedic specialist for appellees' utilization reviewer, and that they agreed the next appropriate step was facet injections. Those injections were per-

formed on November 14, 2003; however, appellees terminated appellant's temporary-total disability benefits as of October 29, 2003, which was the day that Dr. Krishnan and Dr. Mauriello agreed that the injections were an appropriate next step. As it turned out, the injections were of no help. Appellees agreed in January 2004 to allow a discogram. Dr. Krishnan opined that the discogram and a subsequent CT exam showed mild degenerative changes at L2-3, a posterior annular tear at L3-4, and a small central disc herniation at L4-5. He noted, however, that appellant expressed pain at every level from L2 through S1, even though the L5-S1 disc appeared "pretty much within normal limits." Pending a functional-capacity evaluation, Dr. Krishnan released appellant from his care on February 11, 2004, concluding that he had nothing left to offer appellant. Dr. Donald Smith performed the functional-capacity evaluation on March 1, 2004. He concluded that appellant had reached maximum-medical improvement, that he had no permanent impairment, and that he was capable of performing medium-level work. Dr. Smith's review of appellant's radiographic studies prompted him to opine that they showed "some very mild degenerative changes in the L3-L4 and L4-L5 levels, which are commensurate with the patient's age and work history. These studies are essentially normal for a patient of this age group." Dr. Saer released appellant on March 5, 2004, assigning him a five-percent impairment rating to his body as a whole.

On July 5, 2004, a second functional-capacity evaluation was performed by Doin Dahlke. Mr. Dahlke described appellant's functional limitations, in part, as being "able to sit continuously for 20-25 minutes and stand continuously for 20-25 minutes without a change in postural position. He can return to standing after a 5-10 minute sit break." Mr. Dahlke concluded that "Mr. Johnson demonstrated the ability to perform work activities at the LIGHT Physical Demand Classification as determined through the Department of Labor for an 8-hour day with the above limitations."

Bob White, a vocational specialist, was hired by appellant's attorneys to evaluate appellant. Mr. White concluded, in part, that "a combination of age, education, limited work history (*i.e.*, [appellant] has only done heavy unskilled work during his life) in conjunction with a back injury that has not resolved and for which there is no effective treatment, has effectively eliminated him from returning to work in any capacity."

Dale Thomas, a vocational consultant, was hired by appellees' attorneys to evaluate appellant. Mr. Thomas concluded:

Mr. Johnson sustained a job related injury to his lower back and has been diagnosed with low back strain. Functional Capacity Testing was performed in March and July of this year. Test results indicate that Mr. Johnson has at least the ability to perform Light work and possibly the ability to perform some types of Heavy work. However, he is not a suitable candidate to return to past work due to the Heavy nature of that work. He is capable of full time work according to the most recent FCE. Past work as a Welder's Helper has been unskilled. However, the claimant has the skills needed to perform the job of Welder. Mr. Johnson has poor literacy abilities. However, he has some ability to read, write and do simple arithmetic.

Mr. Johnson is capable of working in an unskilled job that falls within the light level of work for a full workday.

In reviewing decisions from the Workers' Compensation Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Whitlatch v. Southland Land & Dev.*, 84 Ark. App. 399, 141 ·S.W.3d 916 (2004). Substantial evidence exists if reasonable minds could reach the same conclusion. *Id.* When a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Id.* We do not reverse a decision of the Commission unless we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached. *Ellison v. Therma Tru*, 71 Ark. App. 410, 30 S.W.3d 769 (2000). The rules of appellate review in workers' compensation cases insulate the Commission from judicial review, and properly so, as it is a specialist in the area and this court is not. *Id.* However, a total insulation would obviously render the appellate court's function in reviewing these cases meaningless. *Id.*

For his first point of appeal, appellant contends that the Commission's decision to award him only a ten-percent wage-loss disability benefit is not supported by substantial evidence. We have concluded that the Commission's analysis of appellant's entitlement to wage-loss disability benefits was flawed in a critical respect, and therefore did not display a substantial basis for the denial of relief.

Appellant's entitlement to permanent-partial disability benefits is controlled by Arkansas Code Annotated section 11-9-522(b) (Repl. 2002), which provides:

(b)(1) In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the Workers' Compensation Commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his or her future earning capacity.

(2) However, so long as an employee, subsequent to his or her injury, has returned to work, has obtained other employment, or has a bona fide and reasonably obtainable offer to be employed at wages equal to or greater than his or her average weekly wage at the time of the accident, he or she shall not be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by a preponderance of the medical testimony and evidence.

Pursuant to this statute, when a claimant has been assigned an anatomical-impairment rating to the body as a whole, the Commission has the authority to increase the disability rating, and it can find a claimant totally and permanently disabled based upon wage-loss factors. *Logan County v. McDonald*, 90 Ark. App. 409, 206 S.W.3d 258 (2005). Wage-loss disability is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Id.* The Commission is charged with the duty of determining disability based upon consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. *Id.* In considering factors that may affect an employee's future earning capacity, the court considers the claimant's motivation to return to work, since a lack of interest or a negative attitude impedes our assessment of the claimant's loss of earning capacity. *Id.*

█ In its opinion, the Commission summarized its reasoning for modifying the wage-loss benefits that the ALJ had assigned to appellant:

The claimant is 49 years old and he has vocational education in welding although the claimant did not pursue this career. The claimant lacks motivation to return to work because he will not take

a job that pays less than the $18.63 he was making before he sustained his compensable injury. *The claimant refuses to move from the area where he lives even though the labor market in his area is depressed. The claimant should not be rewarded for refusing to seek employment at lesser wages and for refusing to move to an area that offers more opportunities for work.* Simply put, when we consider the claimant's age, education, work experience, motivation and physical restrictions, we find that the claimant has proven by a preponderance of the evidence that he is entitled to wage loss disability benefits in the amount of 10% over and above his permanent anatomical impairment of 5% to the body as a whole thereby giving the claimant a total of 15% in permanent impairment. Accordingly, we modify the · Administrative Law Judge's award of 45% to 10%.

(Emphasis added.) While it was perfectly acceptable for the Commission to consider appellant's motivation to return to work in assessing his wage-loss disability, we conclude that the Commission erred in relying upon appellant's refusal to move from his geographical area as a factor establishing that he lacked motivation to return to work. That factor is more appropriately considered under subsection (2) of section 11-9-522(b) with respect to a "bona fide and reasonably obtainable offer to be employed at wages equal to or greater than his or her average weekly wage at the time of the accident[.]"

In addition, neither the parties' research, nor ours, nor the Commission's opinion has revealed an Arkansas case that addresses the geographical location of jobs in determining whether a claimant's refusal to consider jobs that are remotely located is an indication of lack of motivation. However, with respect to whether the refusal of an actual job offer is reasonable, in other jurisdictions, such "[r]efusals have been usually, but not always, sustained as reasonable when the proffered position required a long-distance commute or when the position only offered part-time income." *Larson's Workers' Compensation Laws* § 85.02 (2005).

Here, of course, appellant was not actually offered a job in a remote location because he refused even to consider such a relocation, a fact that the Commission attributed to lack of motivation. In short, we hold that the Commission erred in analyzing the lack-of-motivation issue in that fashion, especially in light of the fact that in many jurisdictions the refusal of an actual job offer is reasonable if the job is remote in location. The Commission's determination that appellant lacked motivation to return to work seemingly formed a substantial part of the basis for

its denial of wage-loss disability benefits. Because the Commission's analysis of that issue was flawed, the Commission's opinion did not display a substantial basis for the denial of relief, and we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. We therefore reverse and remand on this issue.

For his second point of appeal, appellant contends that he was "entitled to an award of temporary total disability for the period from October 30, 2003 through March 5, 2004." We agree.

Temporary-total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages. *Searcy Indus. Laundry, Inc. v. Ferren*, 92 Ark. App. 65, 211 S.W.3d 11 (2005). When an injured employee is totally incapacitated from earning wages and remains in his healing period, he is entitled to temporary-total disability. *Id*. The healing period ends when the employee is as far restored as the permanent nature of his injury will permit, and if the underlying condition causing the disability has become stable and if nothing in the way of treatment will improve that condition, the healing period has ended. *Id*. The determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence. *Id*. These are matters of weight and credibility, and thus lie within the exclusive province of the Commission. *Id*.

Here, the Commission's finding that appellant's healing period ended on the date of October 30, 2003, is not supported by substantial evidence. Rather, the Commission, in something of an after-the-fact fashion, reasoned:

> It is clear that the claimant's healing period ended on October 30, 2003. *None of the medical treatment the claimant received after October 30, 2003, improved the claimant's condition.* Therefore, the claimant is not entitled to temporary total disability benefits after October 30, 2003.

(Emphasis added.) We reject the Commission's rationale for denying appellant's temporary-total disability benefits.

At the time appellant was receiving the medical treatment during this period, it is clear that Dr. Krishnan hoped that it would improve appellant's condition. In addition, the treating doctors

did not assign October 30, 2003, as the date upon which appellant reached maximum-medical improvement. Pending a functional-capacity evaluation, Dr. Krishnan released appellant from his care on February 11, 2004, concluding that he had nothing left to offer him. Dr. Donald Smith performed the functional-capacity evaluation on March 1, 2004. Dr. Saer found that the healing period ended on March 5, 2004.

■   In summary, we hold that the Commission's analysis of this issue was flawed in that it based its decision on the fact that none of the procedures after October 29, 2003, were successful in treating appellant's condition rather than deciding the issue on the medical evidence that was presented, which showed that appellant remained within his healing period and was being treated with the goal of improving his medical condition. Because the Commission's analysis of this issue was also flawed, its opinion did not display a substantial basis for the denial of this relief either, and we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. We therefore reverse and remand on this issue.

For his final point of appeal, appellant contends that he is "entitled to continued medical treatment for his pain." This issue is moot. The ALJ found in appellant's favor on this issue, and appellees did not appeal the issue to the Commission. Therefore, the ALJ's decision on this point remains intact.

Reversed and remanded.

BIRD and CRABTREE, JJ., agree.