SSI, INC. and Protegrity Services, Inc. *v.*
Earnest Dale LOHMAN

CA 06-875                                               254 S.W.3d 804

Court of Appeals of Arkansas
Opinion delivered April 4, 2007

*Huckabay, Munson, Rowlett & Moore, P.A.*, by: *Melissa Ross*, for appellants.

*Walker, Shock, Cox & Harp, PLLC*, by: *Eddie H. Walker, Jr.*, for appellee.

LARRY D. VAUGHT, Judge. This is the second appeal of this workers' compensation claim. In *Lohman v. SSI, Inc.*, 94 Ark. App. 424, 232 S.W.3d 487 (2006), we held that Lohman did not refuse to participate in or cooperate with an offered program of rehabilitation and job-placement assistance and, therefore, he was not precluded from receiving wage-loss disability benefits beyond his permanent-impairment rating. We then remanded the case for the Commission to determine whether Lohman was entitled to wage-loss benefits in excess of the rating. On remand, the Commission affirmed and adopted the opinion of the administrative law judge finding that Lohman was entitled to sixty-percent wage-loss disability. SSI argues on appeal that there is a lack of substantial evidence to support this award. We affirm.

At the hearing, Lohman, then thirty-nine years old, testified that he performed construction work for SSI. On April 16, 2001, he fell approximately twenty feet to the ground suffering multiple injuries including a cervical-spine fracture, rib fractures, and a fracture of the right-upper extremity. On April 17, 2001, cervical diskectomy and fusion at the C5-6, C6-7, and C7-T1 levels were performed by Dr. Arthur Johnson. The surgery also included removal of a portion of the vertebral body at C7, decompression of the spinal canal, the implantation of a plating system, and placement of a halo-fixation device. Another fusion was performed on May 8, 2001. Thereafter, Lohman participated in physical therapy and, in September 2001, he was released by Dr. Johnson with a permanent-physical-impairment rating of fifteen percent.

After being released from Dr. Johnson's care, Lohman continued to experience significant pain and discomfort. In June of 2002, Lohman was seen by Dr. Bradley Short who began prescribing narcotic medication. Lohman reported increased functioning and lessening of his pain with the medication and requested additional medication, which Dr. Short prescribed. Dr. Short's reports and Lohman's testimony confirmed that Lohman was having difficulty controlling his use of the medication. Lohman presented to the emergency room in May 2003, with opiate withdrawal as a result of misuse of pain medication. At that time, Dr. Short discontinued his treatment of Lohman.

In June 2003, Lohman came under the treatment of Dr. George Howell, who also prescribed narcotic pain medication for Lohman and, once again, Lohman became addicted to the medication. While being treated by Dr. Howell, Lohman was also being treated by Dr. Brackman who reported that Lohman suffered from depression and anxiety and that these conditions were not being treated. As such, he prescribed medication for Lohman's depression.

At SSI's request, Lohman was seen by Dr. Reza Shahim. Dr. Shahim confirmed that Lohman was entitled to an impairment rating of fifteen percent and that he could return to work with a lifting restriction of forty pounds. Lohman was also seen by Dr. Patricia Walz for a psychological evaluation in connection with his application for social security disability benefits. After testing, Dr. Walz concluded that Lohman functioned in the extremely low-to-borderline intelligence range. While Lohman's reading was at the high-school level, his spelling was at the fourth-grade level,

and his math was at the third-grade level. Dr. Walz diagnosed Lohman with major depression and borderline-intellectual functioning.

Lohman was evaluated by three rehabilitation specialists: Dale Thomas, Tanya Owen, and Terry Owens. Thomas's report reflected that Lohman was cooperative with rehabilitation and job-placement efforts, while the reports of Owen and Owens indicated that Lohman was not cooperative. Owens testified that Lohman failed to appear for scheduled appointments, did not attend approved physical therapy sessions, did not attend visits with her, and did not follow through with attempting to find work as she suggested and encouraged him to do. She also testified that Lohman suffered from major depression, which should be treated before vocational rehabilitation or job-placement assistance proceeded.

When questioned about his current condition, Lohman testified that he suffered significant back pain daily. At the hearing, the evidence showed that he had to position the witness chair near a wall so he could brace his back against the wall for support. He also admitted that he abused narcotic medication during the course of his treatment because the narcotic medication offered him such significant relief from pain that he began taking more than was prescribed. He also testified that it caused other less favorable side effects such as forgetfulness, severe depression, aggressive behavior, sleep-walking, and suicidal withdrawals. He testified that he no longer consumed narcotic medications and coped by living with the pain.

SSI offered the testimony of an investigator who videotaped Lohman for two days in September 2002. The investigator testified that he observed Lohman sitting in the bleachers at a pee-wee football game. Lohman was also observed walking up and down the field marking downs with a down-marker and carrying a young female on his back at halftime. On the second day, the investigator witnessed Lohman enter and exit a Wal-Mart, get gas, clean out the back of his truck, and go home.

In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence — evidence that a reasonable person might accept as adequate to support a conclusion. *Logan County v. McDonald*, 90 Ark. App. 409, 206 S.W.3d 258

(2005). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding. *Id.* If reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Cooper v. McBurney Corp.,* 72 Ark. App. 332, 39 S.W.3d 1 (2001).

Lohman's claim for wage-loss disability benefits is controlled by Ark. Code Ann. § 11-9-522(b) (Repl. 2002), which provides:

> (b)(1) In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the Workers' Compensation Commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his or her earning capacity.

Wage-loss disability is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Johnson v. Latex Constr. Co.,* 94 Ark. App. 431, 232 S.W.3d 504 (2006). The Commission is charged with the duty of determining disability based upon consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. *Id.* The claimant's motivation to return to work, or lack thereof, is a factor that can be considered when determining an employee's future earning capacity. *Id.*

On remand, the Commission affirmed the ALJ's decision awarding Lohman wage-loss benefits in the amount of sixty percent. For reversal, SSI argues that there is a lack of substantial evidence to support the Commission's decision. SSI first contends that Lohman is not entitled to wage-loss disability because he was returned to work without restrictions by Dr. Johnson. However, the Commission questioned the credibility of Dr. Johnson's opinion because a valid functional-capacity evaluation concluded Lohman could only perform in the light category of work with occasional lifting of twenty-five pounds. The Commission must weigh the medical evidence and, if such evidence is conflicting, its resolution is a question of fact for the Commission. *Allen Canning Co. v. Woodruff,* 92 Ark. App. 237, 212 S.W.3d 25 (2005). The Commission's resolution of the medical evidence has the force and effect of a jury verdict. *Id.*

SSI next argues that the video taken in September 2002 demonstrated that Lohman was capable of more physical activity than he claimed at the hearing. However, the Commission spe-

cifically addressed this contention, noting that the antiquated footage did not accurately reflect Lohman's immediate state of health. The Commission also found that Lohman offered a credible explanation for his increased mobility at the time the tape was recorded — he was abusing narcotic medications. The Commission found Lohman credible, and, once the Commission has made its decision on issues of credibility, we are bound by that decision. *Strickland v. Primex Technologies*, 82 Ark. App. 570, 120 S.W.3d 166 (2003).

Finally, in what developed into its primary argument on appeal, SSI contends that Lohman's depression should not be considered in determining whether he is entitled to wage-loss disability. SSI argues that depression was not found to be compensable either as a compensable mental injury or as a compensable consequence. In the alternative, SSI contends that because Lohman's depression was not found to be permanent, a wage-loss determination is premature.

SSI's focus on Lohman's depression is misplaced. The ALJ's opinion, which was adopted and affirmed by the Commission, specifically found that "[i]n assessing claimant's wage loss I have not taken into consideration the diagnosis of depression." Moreover, we see SSI's argument as nothing more than an attempt to re-litigate the issue in *Lohman I*. We have already resolved the issue of whether Lohman's depression precludes him from being entitled to wage-loss benefits — it does not — and, therefore, this argument must fail.

█ The Commission not only addressed, and discounted, each of the arguments made by SSI, the Commission also set forth the evidence upon which it relied in reaching its decision that Lohman was entitled to sixty-percent wage-loss disability. The Commission relied upon: (1) Lohman's age — thirty-nine; (2) his borderline-intellectual range; (3) the fifteen-percent impairment rating; (4) his prior employment driving a propane truck and working as a mechanic; (5) his complaints of pain and difficulty sleeping and driving. We hold that this evidence is substantial. Accordingly, we affirm the Commission's decision awarding Lohman wage-loss benefits in an amount equal to sixty percent, which is in excess of the permanent physical-impairment rating of fifteen percent.

Affirmed.

GLADWIN and BIRD, JJ., agree.